**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UJUCHRIS OKEREH** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-1552 (RJL)** |
| | ) |
| | ) |
| **DONALD C. WINTER,** | ) |
| **SECRETARY OF THE NAVY** | ) |
| **Defendant.** | ) |
| _____ | ) |

Pursuant to Fed.R.Civ.P. 56, Defendant moves for summary judgment because Plaintiff did not file his Complaint within 90 days after the final agency decision. In support, Defendant submits a memorandum of points and authorities, a statement of material facts not in dispute, accompanying exhibits, and a proposed order. Plaintiff, *pro se*, should take notice that any factual assertions contained in the statement and other attachments in support of Defendant's motion may be accepted by the Court as true, unless Plaintiff submits his own affidavit, declaration, or other documentary evidence contradicting the assertions in Defendant's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C.Cir. 1992).

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4220
Washington, D.C. 20530

Dated: April 9, 2008

_____ **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing Motion for Summary Judgment, Statment of Facts, and Memorandum of Points and Authorities were made by e-mail <u>and</u> mail via first class postage, this 9th April 2008 to:

Ujuchris Okereh
12107 Woodwind Lane
Mitchellville, Maryland 20721

/s/_____
Blanche L. Bruce
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


**UJUCHRIS OKEREH**         )
                                )
        **Plaintiff,**       )
                                )
       **v.**                 )  **Civil Action No. 07-1552 (RJL)**
                                )
                                )
**DONALD C. WINTER,**     )
**SECRETARY OF THE  NAVY** )
        **Defendant.**    )
_____)


**<u>STATEMENT OF MATERIAL FACTS NOT IN GENUINE ISSUE</u>**

Pursuant to LCvR 7.1(h), Defendant Donald C. Winter, in his official capacity as the Secretary of the Navy, submits this statement of material facts as to which there is no genuine dispute.

1.      At all relevant times to this complaint, Plaintiff was employed as a Logistic Management Specialist for the United States Department of the Navy, Washington, D.C. ("Agency") (Attachment B – Three (3) Notification of Personnel Actions)

2.      On March 6, 2006, the Agency removed Plaintiff from Federal service because of his unacceptable job performance (<u>Id</u>. and Attachment C – Notice of Decision).

**Merit Systems Protection Board Appeal**

3.      On March 31, 2006, Plaintiff appealed his removal to the Merit Systems Protection Board (MSPB) (Attachment D – MSPB Appeal).

4.      On November 3, 2006, a MSPB administrative judge affirmed the Agency's decision to remove Plaintiff from federal service (Attachment F - MSPB decision).

5.      On December 7, 2006, Plaintiff filed a petition for review of the initial decision with the MSPB (Attachment H – MSPB Acknowledgment).

6.      On February 27, 2007, the MSPB denied Plaintiff's petition for review and certified the administrative judge's decision as the final action of the MSPB (Attachment K – Final Order).

7.      The MSPB Final Decision informed Plaintiff that he had a right to request further review of the final decision in one of three different forums.[1] (Id.).

**Employment Discrimination Administrative Process**

8.      On April 13, 2006,  Plaintiff filed an employment discrimination complaint against the Agency alleging discrimination due to race (African-American), national origin (Nigerian), and color (Black) as the reasons for his removal from his Federal job (Attachment A – Formal Complaint of Discrimination).

---

[1]      Plaintiff had three options to appeal the MSPB decision: 1) request the EEOC to review the final agency decision on any discrimination claims no later than 30 calender days after receipt of the order; 2) file a civil action in  United States district court no later than 30 calendar days after receipt of the order; or 3) request the United States Court of Appeals for the Federal Circuit to review the final decision on Plaintiff's claims other than the discrimination claims, by filing with the court no later than 60 calendar days after receipt by his representative.

9.      On May 9, 2006, the Agency dismissed Plaintiff's discrimination complaint based on Plaintiff's appeal to MSPB (Attachment E - Agency Dismissal).

10.     On November 20, 2006, Equal Employment Opportunity Commission (EEOC) Office of Federal Operations (OFO) dismissed Plaintiff's employment discrimination appeal (Attachment G – EEO decision).

11.     On December 27, 2006, Plaintiff filed a request for reconsideration of the decision, Ujuchris Okereh v. Department of the Navy, EEOC No. 0120063850 (November 20, 2006) (Attachment I – EEOC's Acknowledgment of Complainant's Request).

12.     On February 8, 2007, EEOC OFO denied Plaintiff's request for reconsideration and issued a final agency decision stating, among other things, "You have the right to file a civil action in an appropriate United States District Court **within ninety days (90) calendar days** from the date that you receive this decision."(emphasis in the original) (Attachment J – EEOC Denial).

13.     Plaintiff filed his civil action in District Court on August 31, 2007 (Docket No. 1), more than 200 days after the final agency decision.


                           Respectfully submitted,

                           /s/_____
                           JEFFREY A. TAYLOR, D.C. BAR #498610
                           United States Attorney

                           /s/_____
                           RUDOLPH CONTRERAS, D.C. BAR #434122
                           Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR #960245
Assistant United States Attorney
555-4th Street, NW
Washington, D.C.  20530
(202) 307-6078

Of Counsel for the Navy:
Lieutenant Colonel Eric M. Lyon
U. S. Marine Corps

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UJUCHRIS OKEREH** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-1552 (RJL)** |
| ) | |
| ) | |
| **DONALD C. WINTER,** ) | |
| **SECRETARY OF THE NAVY** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for summary
judgment because Plaintiff failed to file a timely complaint.

**FACTUAL BACKGROUND**

Defendant adopts its Statement of Material Facts not in Genuine Dispute.

**ARGUMENT**

**I.    Legal Standards**

A.    **Summary Judgment**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows
that there is no genuine issue as to any material fact and that the moving party is entitled to judgment
as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  The Court must view all facts, and reasonable inferences to be drawn from them, in a
light most favorable to the non-moving party, in determining whether there exists a genuine issue

of material fact  Anderson, 477 U.S. at 255.  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.  The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact.  Id. at 247-48.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts,"  Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  See also Brown v. Small, 2006 WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW).

**Timeliness of Civil Action after Final Agency Action**

"Federal employees may only bring Title VII lawsuits in federal district court if they have exhausted remedies available through administrative processes and filed suit within 90 days of final administrative action."  Price v. Greenspan, 374 F. Supp. 2d 177, 184 (D.D.C. 2005); accord 42 U.S.C. § 2000e-16(c)  (federal employees must file a civil action within ninety days after "receipt of notice of final action."); see also 29 C.F.R. § 1614.407(a) (civil action must be filed within "90 days of receipt of the final action on an individual or class complaint if no appeal has been filed").  Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day. See, e.g., Smith v. Dalton, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (district court dismissed

2

a complaint that was filed ninety-one days after final agency action).

A court, however, has "the power to toll the statute of limitations imposed by Title VII," Smith, 971 F.Supp. at 3. A court may properly allow tolling where "a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her, . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984). The Supreme Court in Baldwin cautioned, however, that congressionally mandated time requirements "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Id. at 152. The tolling power is to be exercised only in extraordinary circumstances. Mondy v. Secretary of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Indeed, generally courts have "been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990). A plaintiff must have exercised due diligence and the excuse for the delayed filing must be "more than a garden variety claim of excusable neglect." Wiley v. Johnson, 436 F. Supp. 91 (D.D.C. 2006), quoting Battle v. Rubin, 121 F. Supp. 2d 4, 8 (D.D.C. 2000).

        **Discussion**

        Plaintiff filed his civil action on August 31, 2007[1], approximately 204 days, after EEOC's February 8, 2007 final action agency, thus, this Court should grant Defendant's motion for summary judgment. The final agency decision clearly placed Plaintiff on notice that he had "90 days" to file

---

[1]        District Court Docket entry 1.

3

his civil action when it stated, "You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision." (emphasis in the original) (Attachment G - Final Agency Decision). Moreover, there is a presumption that Plaintiff received the agency's decision within five (5) calendar days after the February 8, 2007 mailing. (Id.). In this case, Plaintiff acknowledged in his Complaint that he received the "Complaint's Right to File a Civil Action (PO900)" on February 8, 2007 (See Complaint at 2). Hence, Plaintiff had until May 9, 2007, to initiate a timely lawsuit. Rather, Plaintiff filed his civil action on August 31, 2007, "the date of the filing is established by the official docket"[2] more than 200 days after the final agency decision. Therefore, Defendant's motion for summary judgment should be granted.

Furthermore, Plaintiff has failed to plead or prove that equitable tolling should apply in this case. The only possible reason Plaintiff provides for his six-month tardiness does not meet the equitable tolling burden. Plaintiff writes in his Complaint:

> The complaint was originally filed on May 07, 2007, to the attention of: Nancy Mayer Whittington, Clerk, U.S. District Court, Washington, D.C. and was returned as 'Leave to fife [sic] is DENIED." I was advised in person at the court that I may refilled [sic] with applicable fee if still interested. I am therefore refilling [sic] my complaint with the applicable fee and as stipulated in Rev. 4/06, Pro Se Pd./, Attorney.

See Complaint at 1.

First and foremost, as previously stated, the date of the filing is established by the official docket, which is August 31, 2007, and not May 7, 2007, as Plaintiff writes in his pleading. Second, on May 7, 2007, Plaintiff did file an "Application to Proceed Without Prepayment of Fees and

---

[2]        Smith, 971 F.Supp at 3.

4

Affidavit," (IFP Application)  however, a District Court judge denied his application on May 21, 2007.  Furthermore, it was more than 100 days after the denial, on August 31, 2007, that Plaintiff eventually filed his lawsuit.  Consequently, Plaintiff has not met his burden of pleading and proving any equitable reasons for his failure to meet the 90-day time limit even if such time is tolled for the period of time during which his IFP application was pending. See Saltz v. Lehman,  672 F.2d 207, 209 (D.C. Cir. 1982).

In Smith v. Dalton, the complainant filed his complaint "91 days" after the final agency decision.  The complainant's reason for missing the deadline by one-day was that "the time limitations established by law are an 'effective tool for the system' that create 'pit falls throughout the process' and that as a pro se litigant he is no 'match' for defense counsel." Smith, 971 F.Supp. at 3.  The District Court rejected that argument citing Baldwin, "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."(Id.). Similarly, in this case, Plaintiff has not provided this Court with any basis to disregard the statutory mandated 90 days deadline.  "In the absence of any allegations meeting the standard for equitable tolling set forth in Baldwin, plaintiff' complaint must be dismissed as untimely." Smith, 971 F.Supp at 3.  Likewise, summary judgment should be granted to Defendant.

Finally, assuming this Court determines there is a basis for equitable tolling which Defendant does not concede, Plaintiff's hostile work environment claim should be dismissed because he failed to present that claim at the administrative level.  Federal employees must exhaust administrative remedies before filing a civil action.  42 U.S.C. § 2000e-16(c) (Supp. 2000).  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  Federal employees  must timely consult an EEOC counselor before filing a complaint of discrimination. 29 C.F.R. § 1614.105(a)(1) (2001).  If the

5

matter is not resolved through informal counseling, the employee must file a timely written complaint against the discriminatory agency. 29 C.F.R. § 2000e-16(c) (Supp. 2000). The agency must then investigate the matter, after which the employee may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. See 29 C.F.R, § 1614.106(e)(2); 29 C.F.R. § 1614.108 (f). Employees may file a civil action after receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. See 42 U.S.C. § 2000e-16(e); 29 C.F.R. § 1614.407.  "Complainants must timely exhaust these administrative remedies before bringing their claims to court." Bowden, 106 F. 3d at 437; Battle v. Rubin, 121 F. Supp.2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court"); Williams v. Munoz, 106 F. Supp.2d 40, 42 (D.D.C 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action"). Therefore, the hostile work environment claim should be dismissed (Attachment A - Formal Complaint). See Park v. Howard University, 71 F.3d 904 (D.C. Cir. 1995).

## Conclusion

For the above stated reasons, summary judgment should be granted for Defendant.

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UJUCHRIS OKEREH** )<br>)<br>   **Plaintiff,** )<br>)<br>  **v.** )<br>)<br>)<br>**DONALD C. WINTER,** )<br>**SECRETARY OF THE NAVY** )<br>)<br>   **Defendant.** )<br>_____) | **Civil Action No. 07-1552 (RJL)** |

_____**ORDER**

   UPON CONSIDERATION of Defendant's Motion for Summary Judgment, statement of

facts not in dispute, memorandum of points and authorities, and accompanying documents, any

opposition by Plaintiff, reply,  and the entire record herein, it is on this ___ day of

_____, 2008,

   ORDERED that Defendant's Motion for Summary Judgment is Granted.


            _____
            United States District Judge

Attachment A

# FORMAL COMPLAINT OF DISCRIMINATION

(Agency Use Only)
**AGENCY DOCKET NO.**

DON-

| | |
|---|---|
| 1. Name of Complainant (Last, First. MI)<br><br>Okereh, Ujuchris | 2. Are you being represented?<br><br>☒ **YES** (If so, complete 2a-2c below)<br><br>☐ **NO** (Continue with Question No. 3 |
| 1a. Address (incl: City, State, Zip)+<br><br>12107 Woodwind La.<br>Mitchellville, MD<br>20721 | 2a. Name of Representative<br>A. P. Pishevar, Esq. |
| | 2b. Address (incl: City, State, Zip)<br>600 East Jefferson St.<br>Suite 316<br>Rockville, MD 20852 |
| 1b. Home Telephone (incl: area code)<br><br>(302)-345-6289 | 2c. Work Telephone (incl: area code)<br><br>Comm: (301) 279-8773-<br>DSN: |
| 3. Are you now working for the Department of Navy?<br><br>☐ YES (Complete 3a-3b)<br>☒ NO (Continue with Question No. 4) | 3a. Name of Activity where you work:<br><br>N/A |
| | 3b. Street Address of your activity (incl: City, State, Zip):<br><br>N/A |

4. Present Job Title, Series and Grade:
Department of the Navy

5. Name and address of Navy Activity you believe discriminated against you (if different from 3a-3b): U.S. Marine Corps.
  Department of the Navy
  2 Navy Annex
  Washington, DC
        20380-1775

6. Date(s) on which most recent alleged discrimination occurred:

Month  March                    Day  6                    Year  2006

OCPM 12713/02                    I - 10

A.

## FORMAL COMPLAINT OF DISCRIMINATION

(Agency Use Only)
AGENCY DOCKET NO.
DON-

You believe you were discriminated against on the basis of your:
(Check below)

| | | | |
|---|---|---|---|
| ☒ | **RACE** (If so, state your race) Nigerian/African American | ☒ | **NATIONAL ORIGIN** (If so, state origin) Nigerian |
| ☒ | **COLOR** (If so, state your color) Black | ☐ | **SEX**       Male        Female |
| ☐ | **RELIGION** (If so, state your religion) | ☐ | **AGE**       Date of Birth |
| ☐ | **DISABILITY** (Please describe)<br><br>Mental                    Physical | | |
| ☐ | **REPRISAL** (If so, date and description of prior protected activity) | | |

8. Have you discussed your complaint with an EEO Counselor?
☒ YES     ☐ NO

Name of Counselor: Joyce M. Perry

Date of Initial EEO Contact: 01/31/2006

Date of Final Interview: 03/31/2006

9. EXPLAIN SPECIFICALLY HOW YOU WERE DISCRIMINATED AGAINST (That is, treated differently from other employees or applicants, because of your race, color, religion, sex, national origin, age, mental or physical disability, or reprisal.) (If your complaint involves more than one allegation, list and number each allegation separately and furnish specific, factual information in support of each.)

Allegation No. 1 (include basis(es) (See Question No. 7):

       See attached

(Use additional sheets if necessary)

OCPM #2713/02             I - 11

FORMAL COMPLAINT OF DISCRIMINATION

(Agency Use Only)
AGENCY DOCKET NO.
DON-

10.  WHAT SPECIFIC CORRECTIVE ACTION DO YOU WANT TAKEN ON YOUR COMPLAINT?
(If your complaint involves more than one allegation, state corrective
action desired for each separate allegation.) The removal to be reversed as
well as the unacceptable evaluation to be stricken and/or removed from his personnel
folder and not be allowed to be considered in any further matters

11.  WITH REGARD TO THE ALLEGATIONS DESCRIBED IN Question No. 9, HAVE YOU:

☐  filed a grievance through the negotiated grievance procedure?
    If so, date filled _____.

☒  filed an appeal with the Merit Systems Protection Board? If so, date
    filed April 3, 2006 _____.

☐  filed a civil action in U.S. District Court? If so, date filed
    _____.

12. Signature of Complainant

13. Date Signed
APRIL 13, 2006

14a.  Received by:

_____
          (Signature)

b.  Typed Name & Title

c.  Activity Name and Address:

d.  Telephone (incl. area code)
    Comm: _____
    DSN   _____

15. Complaint was:

☐  Mailed:

    Postmark date _____
    Received date _____

☐  Hand Delivered:
    Date _____

DCPM 12713/02                    I - 12

## FORMAL COMPLAINT OF DISCRIMINATION

## (ATTACHMENT TO QUESTION No. 9)

■ is black and of Nigerian origin. His supervisors, Lt. Col Eskelund
an persistently and throughout the course of his employment, engaged
_gainst him based on his race, skin color, and national origin. Mr.
□ly person of Nigerian origin, the only person to whom English was a
_nd the only black civilian employee in the office.

## ¬tracism from Workplace Social Functions and Casual Interactions

■t his employment, Mr. Okereh was consistently and deliberately
■uded from social functions in the workplace, as well as made feel that
office and in casual conversations with colleagues was unwelcome.
≡and Lt. Col. Freeman frequently socialized with others and with each
⊐knowledged Mr. Okereh's presence. In fact, Lt. Col. Eskelund would
⊳ Mr. Okereh's greetings, while always exchanging pleasantries with
⊐e.

■kelund and Lt. Col. Freeman would often ignore Mr. Okereh when he
⊐ipate in casual conversations with other office employees. On several
Eskelund and Lt. Col. Freeman would cut Mr. Okereh off or would
⊐know?" in response to his comments.

⊐ was also deliberately excluded from participation in the office holiday
⊐monly known as "Secret Santa". While everyone else in the office
= party and assigned a role in the gift exchange, Mr. Okereh was not.

¬'s past work record evidences an ability to get along well with other
⊐rticipate socially in the workplace culture. He is not an introvert and
welcomed the opportunity to socialize with his colleagues. Lt. Col.
⊐ol. Freeman encouraged, through their own behavior, an exclusion of
⊐he collegial and occasionally informal atmosphere of the office on the
■kin color and national origin.

## ■ammatical and Spelling Revisions

one occasion Lt. Col. Eskelund drafted and revised a document in his
■kereh present. Lt. Col. Freeman would then proceed to make excessive
■nar, and make stylistic changes to the wording of the document, not
⊐ocument was the product of Lt. Col. Eskelund's effort as well, and not
⊐kereh. The excessive revisions were unwarranted since Lt. Col.
≡ent English speaker, drafted the document, and therefore, they were

made solely as a result of Lt. Col. Freeman's discriminatory attitude toward Mr. Okereh Nigerian origin.

## The Proposal For Removal is Unwarranted and Itself, Discriminatory

The removal itself constitutes an application of a different standard to Mr. Okereh because of his race and national origin, than to other employees. Lt. Col. Eskelund and Lt. Col. Freeman often took issue with Mr. Okereh's grammatical and spelling errors in his emails and memorandums.  Mr. Okereh's professional strengths are not grounded in his English grammar and spelling skills, but this is also not a prerequisite of his position. In fact, Mr. Okereh's accent was obvious to the interviewing committee that recommended him for the position, and they never asked him to provide a writing sample to demonstrate an error free ability to draft documents in the English language.

Certainly Lt. Col. Eskelund has had to make corrections on other employees' work and if Lt. Col. Freeman's unwitting revision of Lt. Col. Eskelund's work is any indication, grammar and stylistic arrangements of words are often subjective to the drafter.  The Proposal for Removal based on the linguistic mistakes made by Mr. Okereh, due to English skills, is motivated by discrimination based on race and national origin.

## Mockery of Accent

On at least one occasion, Lt. Col. Freeman would enter Lt. Col. Eskelund's office, shut the door, and speak in a way intended to imitate and mock the accent of Mr. Okereh. Mr. Okereh's work-space was located adjacent to Lt. Col. Eskelund's office and he could hear Lt. Col. Freeman and Lt. Col. Eskelund laughing at his expense. The mockery of Mr. Okereh's accent by Lt. Col. Eskelund and Lt. Col. Freeman is a specific example of discrimination against Mr. Okereh on the basis on his race and national origin.

## Meeting on or about June, 2005

On or about June, 2005, Lt. Col. Eskelund and Lt. Col. Freeman called Mr. Okereh into his office to tell him that they will be giving him an unacceptable review and to let him know that they are not comfortable working with him and do not want to work with him.

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OKEREH UJUCHRIS NMN | 484778857 | 03-10-1957 | 03-06-2009 |

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 330 | Removal | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| QHM | Reg 432.101 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| LOGISTICS MGMT SPEC  25446-142889 | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0346 | 13 | 02 | $79,931.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $68,026.00 | $11,905.00 | $79,931.00 | $0.00 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| INSTALLATIONS & LOGISTICS DEPARTMENT  LOG PLANS, POLICIES/STRAT MOBILITY DIV  HQ MARINE CORPS WASHINGTON DC 20380 | K400027LP |

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|
| 1  1 - None  3 - 10-Point/Disability  5 - 10-Point/Other  2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30% | 1  0 - None  2 - Conditional  1 - Permanent  3 - Indefinite | | YES   X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinate |
|---|---|---|
| Z5  Basic + Option B (5x) + Option A + Option C (5x) | 9  Not Applicable | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| K  FERS and FICA | 09-13-1998 | F  Full-Time | Biweekly Pay Period |

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1 - Competitive Service  3 - SES General  2 - Excepted Service  4 - SES Career | E  E- Exempt  N - Nonexempt | NAVY  92498/M7 | 7777 |

| 38. Duty Station Code | 39. Duty Station | (City - County - State or Overseas Location) |
|---|---|---|
| 510100013 | ARLINGTON / ARLINGTON / VIRGINIA | |

| 40. AGENCY DATA | 41. UIC: | 42. ORG CODE: | 43. COST CNTR: | 44. PAYROLL OFF ID: |
|---|---|---|---|---|
| | 00027 | LP | 868P | CH  LOC ID: |

**45. Remarks**

Forwarding address: P O Box 26395, Wilmington, DE 19899-6395.  Reason(s) for removal: Unacceptable performance in accordance with 5 USC 43 and 5 CFR Part 432.  Lump-sum payment to be made for any unused annual leave.  SF 2819 was provided. Life insurance coverage is extended for 31 days during which you are eligible to convert to an individual policy (nongroup contract).  Health benefits coverage is extended for 31 days during which you are eligible to convert to an individual policy (nongroup contract).You are also eligible for temporary continuation of your FEHB coverage for up to 18 months.  Not entitled to severance pay.  SF 8 provided.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. Marine Corps (NV27) | Glenn M. Uplhegrove  HR ASST (OA) |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| NV27 | 2413 | 03-13-2006 |

TURN OVER FOR IMPORTANT INFORMATION
5-Part

1 - Employee Copy - Keep For Future Reference

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236



Attachment B

Standard Form 50–B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OKEREH, UJUCHRIS NMN | 464–77–8857 | 03–10–1957 | 02–22–2004 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code **002** | 5–B. Nature of Action **Correction** | 6–A. Code **721** | 6–B. Nature of Action **Reassignment** |
| 5–C. Code | 5–D. Legal Authority | 6–C. Code **N3M** | 6–D. Legal Authority **Reg 335.102 Comp** |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | **LOGISTICS MGMT SPEC** **25548 – 132885** |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan **GS** | 17. Occ. Code **0346** | 18. Grade/Level **12** | 19. Step/Rate **01** | 20. Total Salary/Award **$60,638.00** | 21. Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | | 20A. Basic Pay **$52,899.00** | | 20B. Locality Adj. **$7,739.00** | 20C. Adj. Basic Pay **$60,638.00** | | 20D. Other Pay **$0** |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | **INSTALLATIONS & LOGISTICS DEPARTMENT** **LOG PLANS, POLICIES/STRAT MOBILITY DIV** **HQ MARINE CORPS WASHINGTON DC 20380** |

| EMPLOYEE DATA | | | |
|---|---|---|---|
| 23. Veterans Preference 1 — None 2 — 5–Point 3 — 10–Point/Disability 4 — 10–Point/Compensable 5 — 10–Point/Other 6 — 10–Point/Compensable/30% **1** | 24. Tenure 0 — None 1 — Permanent 2 — Conditional 3 — Indefinite **1** | 25. Agency Use | 26. Veterans Preference for RIF YES | NO **X** |

| 27. FEGLI **Y5** | Basic + Option B (5x) + Option C (5x) | 28. Annuitant Indicator **9** | Not Applicable | 29. Pay Rate Determinant **0** |
|---|---|---|---|---|

| 30. Retirement Plan **K** | FERS and FICA | 31. Service Comp. Date (Leave) **09–13–1998** | 32. Work Schedule **F** | Full–Time | 33. Part–Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|

| POSITION DATA | | | |
|---|---|---|---|
| 34. Position Occupied 1 — Competitive Service 2 — Excepted Service 3 — SES General 4 — SES Career Reserved **1** | 35. FLSA Category **E** E — Exempt N — Nonexempt | 36. Appropriation Code **NAVY 92498/M7** | 37. Bargaining Unit Status **7777** |

| 38. Duty Station Code **510100013** | 39. Duty Station (City – County – State or Overseas Location) **ARLINGTON / ARLINGTON / VIRGINIA** |
|---|---|

| 40. Agency Data | 41. **UIC: 00027** | 42. **ORG: LP** | 43. **CC: 868P** | 44. **PAY OFF: CH/LOC ID:** |
|---|---|---|---|---|

### 45. Remarks

**Corrects item 20 AND 20C from 59,302.00.**

**Corrects item 20A from 52,281.00.**

**Corrects item 20B from 7,021.00.**

| 46. Employing Department or Agency U.S. Marine Corps (NV27) | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| | Merlene R. Arrington |

| 47. Agency Code **NV27** | 48. Personnel Office ID **2413** | 49. Approval Date **04–13–2004** | HUMAN RESOURCES ASSISTANT (OA) |
|---|---|---|---|

1-Employee Copy-Keep For Future Reference

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| OKEREH, UJUCHRIS NMN | 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 | 03-10-1957 | 02-22-2004 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code  721 | 5-B. Nature of Action  Reassignment | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code  N3M | 5-D. Legal Authority  Reg 335.102-Comp | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | LOGISTICS MGMT SPEC  25548 – 132885 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 0346 | 12 | 01 | $59,302.00 | I |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $52,281.00 | $7,021.00 | $59,302.00 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | INSTALLATIONS & LOGISTICS DEPARTMENT  LOG PLANS, POLICIES/STRAT MOBILITY DIV  HQ MARINE CORPS WASHINGTON DC 20380 |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 = None  2 = 5-Point  3 = 10-Point/Disability  4 = 10-Point/Compensable  5 = 10-Point/Other  6 = 10-Point/Compensable/30% | 1 — 0 = None  1 = Permanent  2 = Conditional  3 = Indefinite | | YES  X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| Y5 — Basic + Option B (5x) + Option C (5x) | 9  Not Applicable | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS and FICA | 09-13-1998 | F  Full-Time | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — 1 = Competitive Service  2 = Excepted Service  3 = SES General  4 = SES Career Reserved | E  K = Exempt  N = Nonexempt | NAVY I  92498/M7 | 7777 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 510100013 | ARLINGTON / ARLINGTON / VIRGINIA |

| 40. Agency Data | 41.  UIC: 00027 | 42.  ORG: LP | 43.  CC: 868P | 44.  PAY OFF: CH/LOC ID: |
|---|---|---|---|---|

### 45. Remarks

Selected from EAST0346CNC12(00027–110703)–TG, dated 14–NOV–2003.

Full performance level of employee's position is GS-13.

OPF maintained by HRSC EAST NNSY BLDG 17 PORTSMOUTH VA 23709.

Elected not to enroll for health benefits.

Creditable Military Service: 00 YR, 00 MO

Frozen Service: 00 YR, 00 MO

All information subject to verification upon receipt of Official Personnel Folder.

Completed service requirement for career tenure.

| 46. Employing Department or Agency  U.S. Marine Corps (NV27) | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| | Muriel M. Daughtry |

| 47. Agency Code  NV27 | 48. Personnel Office ID  2413 | 49. Approval Date  03-05-2004 | HR ASST(OA) |
|---|---|---|---|



Attachment C



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380-1775

IN REPLY REFER TO:

12400
LPO
3 Mar 06

From:  Head, Logistics Plans and Operations Center,
       Installations and Logistics Division, Headquarters
       U.S. Marine Corps
To:    Mr. Ujuchris Okereh, GS-0346-13, Logistics
       Management Specialist

Subj:  NOTICE OF DECISION

Ref:   (a) 5 USC Chapter 43
       (b) 5 C.F.R. Part 432
       (c) MCO 12430.2 dtd 28 Dec 98
       (d) Letter of Supervisory Concern dtd 29 Jul 05
       (e) Notice of Unacceptable Performance dtd 15 Sep 05
       (f) Notice of Placement on Performance Improvement/
           Opportunity to Improve dtd 14 Nov 05
       (g) LtCol Eskelund ltr 12430 LPO2/dje dtd 19 Jan 06
           "Proposal to Remove for Unacceptable
           Performance"
       (h) Your letter dtd 3 Feb 06 from Pishevar and
           Associates
       (i) Col Simmons ltr, undated, delivered 6 Feb 06
       (j) Your letter dtd 10 Feb 06 from Pishevar and
           Associates

Encl:  (1) MSPB Regulations
       (2) MSPB Appeal Form

1.  By reference of (a) through (g), you were notified of a
proposal to remove you from Federal employment for
unacceptable performance.  You were informed of your rights
regarding the proposed removal, including the right to
respond to the proposal notice orally, in writing, or both.
By reference (h), you submitted a faxed request from your
attorney requesting an additional 15 days to respond to the
notice of proposed removal.  By reference (i), you were
provided an additional seven days.  I believe you were
provided with sufficient time and a reasonable period to
response.  By reference (j), you submitted your written
response on 10 February 2006.



Subj:   Removal Decision

2.   In reference (j), you cited MCO 12430.2 and S/HHROINST 12752.1.  You stated that discipline under the present circumstances was unwarranted, and that you should

be given the opportunity to be reassigned or reduced in grade.  I note for the record that I am not taking disciplinary action against you, nor do I consider that the action upon which I have decided is capable of being categorized as disciplinary and that S/HHROINST 12752.1 dies not apply.  I am taking action in your case under references (a) and (b), which address deficiencies in performance, not conduct.

3.   Therefore, in arriving at this most difficult decision, I have not considered any Douglas Factors, because I am not bound to do so.  Your situation, the continued unacceptable performance of your duties of record, is a case of first impression within LPO-2.  Having considered all pertinent information, I have determined that substantial evidence supports LtCol Eskelund's determination that your performance is unacceptable.  I have sustained the following reasons and justifications as stated in reference (g).  To that end, I note the following:

     a.   Execution of Duties:  The standard outlined in reference (f) stated that you were to complete work assignments in a timely manner, with specific guidance to turn assignments in early with no more than three typographical errors or misspelled words.

          (1).  As noted in reference (f) and reference (g), you failed to submit for release, by 15 December 2005, the Fiscal Policy message associated with the Prepositioning Oversight Working Group.  Despite the fact you had been originally assigned that task in October 2005, and had been counseled repeatedly to compile the necessary information and present the message for release, the latest date being 12 December 2005, the message was not released.

          (2) LtCol Eskelund rated you unsuccessful on that element, and I concur.  Your performance under "Execution of Duties" is unacceptable.

          (3) Additionally, in the sub-element of professional appearance and content, I note that you were

2

2 of 8

Subject:  Removal Decision

required to submit an Executive Summary (EXSUM) of the
Program Management Group for the Marine Corps
Prepositioning Program - Norway (MCPP-N).  The purpose of
the EXSUM was to address fiscal procedures.

        (4) The version you called final was delivered to
LtCol Eskelund on 13 December 2005.  Before you were
finished examining the EXSUM with LtCol Eskelund, you told
him that your final version was in fact not final, and had
to go back and get another version.  By 15 December 2005,
you had not completed the task.

        (5) LtCol Eskelund rated you unsuccessful on that
sub-element, and I concur.  Your performance under
"Execution of Duties" is unacceptable.

        (6) Another task assigned to you was the
development of Program Objective Memorandum (POM) 2008
initiative submission for MCPP-N.  Initially assigned to
you before you were placed on this PIP, your brief
rehearsal was so poor that LtCol Eskelund was forced to
delay it until you actually researched POM procedures.
After a preparation briefing on 22 November 2005, LtCol
Eskelund prepared the information himself and gave you an
example of the type of briefing he expected.  When you
followed up by contacting other personnel as directed by
LtCol Eskelund, you mishandled his guidance and turned a
short project into a longer one, wasting valuable time.
Finally, on 12 December 2005, you produced a POM example
from the 2006 POM.  You were initially directed to produce
that information in November.  Your minimal efforts lacked
clarity and appropriate content.

        (7) LtCol Eskelund rated you unsuccessful on that
sub-element, and I concur.  Your performance under
"Execution of Duties" is unacceptable.

    b.  Resource Management:  The standard outlined in
reference (f) indicated that successful performance would
be demonstrated by executing your duties in a professional
and competent manner.  That included face-to-face
reconciliation with your counterparts in the Logistics
Support Resource (LSR) Branch which provides LPO-2
requirements throughout the Planning, Programming, and

3 of 8

Subj: Removal Decision

Budgeting System and financial execution processes, on at
least a weekly basis.

(1) Although LtCol Eskelund explicitly directed
you to have weekly, face-to-face reconciliation with Mr.
Rotchford at LSR, you did not.  The funding aspect of your

position is critical to the overall success of LPO-2.  We
have weekly fiscal meetings to ensure that funding and
fiscal matters are handled correctly so that we may carry
out our mission effectively.  Like balancing a checkbook,
the weekly reconciliation process ensures that we are
handling our funds in the most professional and competent
manner.

(2) The failure to conduct reconciliation
directly with LSR connects directly to appropriate and
effective resource management.  In today's Marine Corps, it
is imperative that we manage our resources in the most
effective manner possible.  LtCol Eskelund found your
performance under this critical element to be unacceptable,
and for the above stated reasons, I concur.

c.  Communications: The standard outlined in reference
(f) indicated that successful performance would be
demonstrated by ensuring that your ability to communicate
both internally and externally is sound, rational,
coherent, and grammatically correct.

(1) LtCol Eskelund identified four specific
pieces of your correspondence is paragraph 7a(i)-(iv) of
reference (f).  I note specifically your 12 December 2005
e-mail to Major Stophel.  Your lack of engagement in the
funds transfer process at hand is evident.  You were
directed to coordinate the funds transfer with Captain Ma,
not get into the other information.  Had you coordinated
your work with LtCol Eskelund, as he directed, you would
have known that he was already handling the issues you
raised with Major Stophel.  It appears as if you were going
through the motions of your work instead of being truly
connected to it and getting it accomplished through
effective communication with your supervisor and your
peers.

4 of 8

Subj:  Removal Decision

      (2) In your response, you state that one of your problems with correspondence was your PC's spell-checker. You stated that prior users had saved too many incorrectly spelled words for you to correctly utilize it. It took me less than two minutes to open the dictionary in MS Word, add and delete words, and save it. I find your explanation for misspelled words, therefore, to be specious.

      (3) LtCol Eskelund found your performance under this critical element to be unacceptable, and for the above stated reasons, I concur.

4.  Based upon the foregoing, I have determined that you did not fulfill the requirements of a Logistics Management Specialist, GS-0346-13 in the three factors identified in reference (g). I found nothing of a level of difficulty that a GS-13 specialist with your level of education and experience should not be able to perform at a minimally acceptable level.

5.  In making this determination, I considered the case file compiled by LtCol Eskelund and the written response provided by your attorney. I note for the record in determining that you did not successfully improve your performance over the period of the PIP, that 30 days was a reasonable time for you to improve your performance. As you note in your response, you do have the requisite education and experience to successfully perform your duties.

6.  I note for the record that MCO 12430.2, the Performance Management Program is applicable to your situation. The order requires that the agency give written notice when performance is determined to be unacceptable, a reasonable opportunity to improve, assistance in improving performance and if performance is not sustainable at accepted levels an employee may be reassigned, reduced in grade, or removed. All of those due process requirements have been fulfilled in your case.

7.  Your response included allegations that LtCol Eskelund and LtCol Freeman subjected you to discrimination. The Marine Corps as an institution is totally committed to

5 of 8

Subject:  Removal Decision

equal opportunity for all persons, irrespective of race,
national origin, gender, sex, disability, and all other
prohibited factors.  I am completely committed to that same
goal.  I will not tolerate discrimination within my
organization.  I am aware of the fact that you have
contacted the EEO office concerning your employment here at
LPO-2.  I have not considered that fact in making my
decision to remove you.  I fully and completely support the
right of each individual to exercise his or her rights in
the employment arena.

→8.  In your response, you assert that funds in excess of
$12,000.00 were expended for two Blackberries.  I very
carefully reviewed your allegations of mismanagement of
funds and found that the procurement of the two
Blackberries was executed via an OPBUD transfer and the
cost was $2,506.  There was no improper procurement.

9.  You allege that LtCol Eskelund and LtCol Freeman wanted
to use federal money to pay for food and entertainment.
You further allege that LtCol Eskelund used a credit card
to purchase office supplies.  You also assert that LtCol
Freeman once wore a "mock turban" on his head and played
"Muslim" music.

        a.  If you believe that any of these alleged actions
were directed towards you, you have the opportunity to
raise them to the EEO, as well as in other forums, to
include the Office of Special Counsel (OSC).  You may also
contact the Marine Corps Inspector General with your
concerns.

        b.  I have discussed these allegations with both LtCol
Eskelund and LtCol Freeman.  Based upon our discussions, I
have determined that the allegations are unfounded.
However, as I state above, you may further pursue any of
those allegations to the EEO, the OSC, or the Marine Corps
IG.  I note for the record, however, that neither I nor any
other person within your chain of command was advised of
these allegations prior to the time that LtCol Eskelund
placed you on the Performance Improvement Plan.

10.  In the conclusion to your response, you state that a
preponderance of the evidence does not support the action
proposed by LtCol Eskelund.  I direct your attention to

6 of 8

Subj:  Removal Decision

paragraph 2 of this letter.  This is not a disciplinary
action, it is a performance case, and the standard of proof
is substantial evidence.  Therefore, I cannot grant your
request to deny the proposed removal, or remove any
reference to it from your records.

11.  You requested additional time to amend or supplement
this response due to the "short turn around time" provided
for your response.  I note for the record that you received
the Proposal To Remove on 19 January 2006.  In paragraph 10
on the Proposal, you were advised that you had
15 days to present a response.  Fifteen calendar days ran
from 20 January to 3 February 2006.  Prior to 3 February
2006, you provided me with no notice of intent to respond.
On 3 February, I received a call from an attorney that
informed me that he was representing you and would FAX'ing
your rebuttal.  At 1759 on 3 February, after the close of
the business day, I received a FAX from your attorney
requesting an extension of time to respond.  See reference
(h).  By reference (i), I responded and granted you an
extension until 10 February.  Based on the time you were
provided, and the additional time you requested and were
granted, I believe that the requirements of due process and
fair play have been met in your case.  I do not intend to
provide any additional time for you to respond to the
Proposal.

12.  Therefore, for all of the reasons cited above, I find
that your removal for unacceptable performance is
warranted.  Accordingly, it is my decision that you be
removed from your position of Logistic Management
Specialist, GS-0346-13, and from the Federal Service
effective 6 March 2006.  An SF-50, Notification of
Personnel Action, will be sent to you shortly to document
this personnel action.

13.  Should you desire to discuss the process or contents
of this letter, or any other administrative avenues
available to you, please contact Mr. Garry Begg,
Employee/Management Advisor, at the Human Resources and
Organizational Management Office, (703) 614-1910.

7 of 8

Subj: Removal Decision

14.   You have the right to appeal this action to the Merit
Systems Protection Board (MSPB) not later than 30 calendar
days from the effective date of this action.   A copy of the
MSPB appeal regulation is     provided at enclosure (1).
Your appeal may be in any format, including letterform, as
long as it is in writing and contains all of the
information specified in the Board's regulations.   Use of
the appeal form provided in enclosure (2) will satisfy the
Board's requirements for information to be included in the
appeal.   You may also file your appeal electronically via
www.mspb.gov.  Your appeal, if any, must be submitted to the
Merit Systems Protection Board, Washington D.C. Regional
Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia
22314-2840.


15.   Please sign and date the acknowledgment copy of this
letter in the space below.   By doing so, you will not
forfeit any of the rights mentioned in this letter.
Failure to sign does not void the content of this letter.

J. W. SIMMONS
Colonel, U.S. Marine Corps


Copy to:
ARHC (Garry Begg)
CL (LtCol Damisch)



ACKNOWLEDGMENT OF RECEIPT:


_____         MARCH 3 '06
SIGNATURE                       DATE

8 of 8

Attachment D

## PART 1—Appellant and Agency Information

Complete this part regardless of which type of appeal you are filing. Then proceed to Part 2 if you are appealing an agency personnel action or decision, to Part 3 if you are appealing an administrative decision or action affecting your retirement rights or benefits, or to Part 5 if you are filing an IRA appeal, USERRA appeal, or VEOA appeal.

*Please type or print legibly.*

**1. Name** *(last, first, middle initial)*

Okereh, Ujuchris

**2. Present address** *(number and street, city, State, and Zip code)*
**You must notify the Board in writing of any change in your mailing address while your appeal is pending.**

Address: 12107 Woodwind La.

City, State, Zip code: Mitchellville, MD   20721

**3. Telephone Numbers** *(include area code)* **and E-Mail Address**
**You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending**

Home: (    )    Work: (    )    FAX: (    )    Other: (30) - 345- 6289

E-mail Address:

**4. Name and address of the agency that took the action or made the decision you are appealing** *(include bureau or division, street address, city, State and Zip code)*

Agency Name: Department of the Navy

Bureau: United States Marine Corps.

Address: 2 Navy Annex

City, State, Zip code: Washington, DC 20380- 1775

| 5. Your Federal employment status at the time of the action or decision you are appealing: | 6. Type of appointment (if applicable): |
|---|---|
| [✓] Permanent    [ ] Temporary    [ ] Term | [✓] Competitive    [ ] Excepted |
| [ ] Seasonal    [ ] Applicant    [ ] Retired | [ ] Postal Service    [ ] SES |
| [ ] None | [ ] Other (describe): |

2008 APR -3 AM 9:30   RECEIVED MSPB WRE

| 7. Your position, title, grade, and duty station at the time of the action or decision you are appealing (if applicable): | 8. Are you entitled to veterans' preference? See 5 U.S.C. 2108. |
|---|---|
| Occupational Series:    Position Title: Logistics Management Specialist | [ ] Yes    [✓] No |
| Grade: GS-13    Duty Station: Arlington/Arlington/Virginia | |

| 9. Length of Government service (if applicable): | 10. Were you serving a probationary or trial period at the time of the action or decision you are appealing? |
|---|---|
| 9 ½ years | [ ] Yes    [✓] No |

MSPB Form 185, Page 3 (07/03)
5 C.F.R. Parts 1201, 1208 and 1209

Enclosure (2)

D

## PART 1—Appellant and Agency Information (continued)

**HEARING:** You may have a right to a hearing before an administrative judge. If you choose to have a hearing, the Board will notify you when and where it is to be held. If you do not want a hearing, the Board will make its decision on the basis of the submissions of the parties.

11. Do you want a hearing?    [✓] Yes    [ ] No

12. I certify that all of the statements made in this form and any attachments are true, complete, and correct to the best of my knowledge and belief.

Signature of Appellant or Representative:                    Date:

                                                            3/31/06

## PART 2—Agency Personnel Action or Decision (non-retirement)

Complete this part if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule or regulation. See 5 C.F.R. 1201.3 (a) for a list of appealable personnel actions and decisions. If the personnel action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.

13. Check the box that best describes the agency **personnel action or decision** you are appealing. (If you are appealing more than one action or decision, check each box that applies.) **Attach a copy** of the proposal letter and decision letter (if any). If an SF-50 or its equivalent was issued and is available, attach it now; however, DO NOT delay filing your appeal because you do not have an SF-50. You may submit the SF-50 when it becomes available.

[✓] Removal                      [ ] Reduction in grade or pay          [ ] Suspension for more than 14 days

[ ] Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)

[ ] Furlough of 30 days or less                                         [ ] Termination during probationary period

[ ] Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement

[ ] Negative suitability determination                                  [ ] Denial of within-grade increase

[ ] Other action, *describe:*

| 14. Date you received the agency's proposal letter (if any) *(month, day, year)* *(Attach a copy)*: | 15. Date you received the agency's final decision letter (if any) *(month, day, year)* *(Attach a copy)*: | 16. Effective date (if any) of the agency action or decision *(month, day, year)*: |
|---|---|---|
| 01 \| 19 \| 2006 | 03 \| 03 \| 06 | 03 \| 07 \| 2006 |

17. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

[ ] Yes *(Attach a copy of the agreement)*              [✓] No

## PART 2—Agency Personnel Action or Decision (non-retirement) (continued)

18. Explain briefly why you think the agency was wrong in taking this action or making this decision.

See Exhibit 3.

19. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

I would like the Board to deny the request for removal in it's entirety. I also request that the unacceptable evaluation along with the proposal for removal be stricken and/or removed from my personnel folder and not be allowed to be considered in any future matters.

20. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

[ ] Yes                    [X] No

If "Yes," attach a copy of the grievance, enter the date it was filed *(month, day, year)*, and enter the place where it was filed **if different from your answer to question 4 in Part 1**:

Agency Name:                              Date Filed:

Bureau:

Address:

City, State, Zip code:

If a decision on the grievance has been issued, **attach a copy of the decision** and enter the date it was issued *(month, day, year)*:

## PART 3—OPM or Agency Retirement Decision or Action
Complete this part if you are appealing an administrative decision or action by the Office of Personnel Management (OPM) or a Federal agency affecting your rights or benefits under the Civil Service Retirement System (CSRS) or the Federal Employees' Retirement System (FERS). See 5 C.F.R. 1201.3(a)(6). If the decision or action is appealable to the Board, you should have received a final decision from OPM or the agency that informs you of your right to file an appeal with the Board.

21. In which retirement system are you enrolled?

[ ] CSRS        [ ] CSRS Offset        [ ] FERS

[ ] Other, *describe*:

22. Are you a:

[ ] Current Employee            [ ] Annuitant

[ ] Surviving Spouse

[ ] Other, *describe*:

## PART 3—OPM or Agency Retirement Decision or Action
### (continued)

| 23. If retired, date of retirement *(month, day, year)*: | 24. Are you appealing an action or decision concerning a retirement coverage error under the provisions of the Federal Erroneous Retirement Coverage Corrections Act (FERCCA)?<br><br>[ ] Yes    [ ] No |
|---|---|

25. Describe the retirement decision or action you are appealing.

### Answer either Question 26 OR Question 27, whichever applies to your appeal.

26. If you are appealing an OPM retirement decision, have you received a final or reconsideration decision from OPM?

    [ ] Yes *(Attach a copy)*        [ ] No

If "Yes," on what date did you receive the OPM decision *(month, day, year)*?

27. If you are appealing a retirement decision or action by a Federal agency other than OPM, have you received a final decision from that agency?

    [ ] Yes *(Attach a copy)*        [ ] No

If "Yes," on what date did you receive the agency decision *(month, day, year)*?

Please provide the **10-digit Claim Number** from the first page of the OPM final decision. [ _ _ _ _ _ _ _ _ _ _ ]

28. Why do you think the decision or action was wrong?

29. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

### PART 4—Other Claims

If you completed Part 2 to appeal an agency personnel action or decision or Part 3 to appeal an administrative decision or action affecting your retirement rights or benefits, you may raise certain other claims in connection with that appeal. Such claims must be raised no later than the close of the conference(s) held to define the issues in your appeal. See 5 C.F.R. 1201.24(b). If you wish to raise any of these claims at this time, check the appropriate box (or boxes) in this part to indicate the claim(s) you are raising. Provide information supporting the claim(s), including any information required by the Board's regulations for the specific type of claim(s), on a separate sheet of paper and attach it to this form. If you prefer, you may raise such claims later—but no later than the close of the conference(s) on your appeal. Remember that you are responsible for proving each claim you raise.

MSPB Form 185, Page 6 (07/03)
5 C.F.R. Parts 1201, 1208 and 1209

# PART 4—Other Claims
## (continued)

30. Check the appropriate box (or boxes) for any claim(s) that you wish to raise at this time **in connection with the action or decision you are appealing in Part 2 or Part 3**, and provide supporting information as an **attachment** to this form:

[ ] A claim that the agency made errors in applying required procedures (harmful error), or that the agency action or decision was the result of a prohibited personnel practice, or that the agency action or decision was not in accordance with law. See **5 C.F.R. 1201.56**(b) **and (c)(3).** For prohibited personnel practice claims, also see **5 U.S.C. 2302(b).**

[✓] A claim that the agency action or decision was the result of prohibited discrimination (race, color, religion, sex, national origin, disability, age). See **5 C.F.R. 1201.151** and **1201.153.** If you previously filed a **formal** discrimination complaint with the **agency** concerning the action or decision you are appealing, **attach a copy of the complaint.** If the agency has issued a final decision on your discrimination complaint, **attach a copy of the decision.**

[ ] A claim that the agency action or decision was based on whistleblowing. See **5 U.S.C. 2302(b)(8), 5 C.F.R. 1209.2**(b)(2), and **5 C.F.R. 1209.6**(a). If you previously sought corrective action from the Office of Special Counsel (OSC) concerning the same disclosure(s) and the same agency action or decision you are appealing, **attach a copy of your request to OSC for corrective action.** If you have received written notice from OSC of your right to appeal to the Board, **attach a copy of the OSC notice.** Also see **5 C.F.R. 1209.8** and **1209.9** if you wish to request a stay of the agency action or decision.

[ ] A claim that the agency violated your rights under the Uniformed Services Employment or Reemployment Rights Act (USERRA) (other than rights related to the Thrift Savings Plan for Federal employees) in taking the action or making the decision. **See 38 U.S.C. 4322** and **4324, 5 C.F.R. 1208.11,** and **5 C.F.R. 1208.13.** If you previously filed a USERRA complaint with the Department of Labor (DOL) on this matter, **attach a copy of the complaint.** If you have received written notice from DOL that your USERRA complaint could not be resolved, **attach a copy of the DOL notice.**

[ ] A claim that the agency violated a law or regulation relating to veterans' preference in taking the action or making the decision. **IMPORTANT:** If you choose to make your veterans' preference claim in connection with this appeal of an agency action or decision, you may NOT also file a complaint under the redress procedure of the Veterans Employment Opportunities Act (VEOA) with DOL. See **5 U.S.C. 3330a(e)** and **5 C.F.R. 1208.26.**

## PART 5—IRA Appeal, USERRA Appeal, or VEOA Appeal

Complete the applicable question in this part ONLY if you are filing an Individual Right of Action (IRA) appeal under the Whistleblower Protection Act, a Uniformed Services Employment and Reemployment Rights Act (USERRA) appeal, or a Veterans Employment Opportunities Act (VEOA) appeal.

Before you may file an IRA appeal with the Board, you must first file a whistleblower complaint with the Office of Special Counsel (OSC) and exhaust the procedures of that office. See 5 C.F.R. 1209.2(b)(1). To pursue redress for a USERRA violation, you may either file a USERRA complaint with the Department of Labor (DOL) or file an appeal with the Board. However, if you filed a USERRA complaint with DOL, you must exhaust DOL procedures before you may file an appeal with the Board. See 5 C.F.R. 1208.11. Before you may file a VEOA appeal with the Board, you must first file a VEOA complaint with DOL and allow DOL at least 60 days to try to resolve the matter. See 5 C.F.R. 1208.21.

### Answer Question 31 ONLY if you are filing an IRA appeal.

31. Have you exhausted OSC procedures with respect to your whistleblower complaint, i.e., with respect to the same disclosure(s) and the same agency action or decision underlying your IRA appeal?

                               [ ] Yes        [ ] No

If "Yes," **attach a copy of your complaint to OSC,** provide the information required by the Board's regulations at **5 C.F.R. 1209.6(a)** as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from OSC of your right to file an IRA appeal with the Board, **attach a copy of the OSC notice.** Also see **5 C.F.R. 1209.9** if you wish to request a stay of the agency action or decision.

32. Have you previously filed a USERRA complaint with DOL on this matter?     [ ] Yes     [ ] No

If "Yes," attach a copy of your USERRA complaint to DOL, provide the information required by the Board's regulations at **5 C.F.R. 1208.13(a)** as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from DOL that your USERRA complaint could not be resolved, attach a copy of the DOL notice. If your USERRA complaint was referred to OSC and OSC declined to represent you, attach a copy of the OSC notice. If OSC is representing you in your USERRA appeal, complete Part 6.

If "No," provide the information required by the Board's regulations at **5 C.F.R. 1208.13(a)** as an attachment to this form, and explain what action you would like the Board to take in this case.

33. Have you filed a VEOA complaint with DOL and allowed DOL at least 60 days to try to resolve this matter?     [ ] Yes     [ ] No

If "Yes," attach a copy of your VEOA complaint to DOL, provide the information required by the Board's regulations at **5 C.F.R. 1208.23(a)** as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from DOL that your VEOA complaint could not be resolved, attach a copy of the DOL notice and provide the date you received it. If more than 60 days have passed since you filed your VEOA complaint with DOL and your complaint has not been resolved, attach a copy of your notice to DOL stating your intent to appeal to the Board and provide the date you sent it to DOL.

## PART 6—Designation of Representative

Complete this part to designate an organization or a person who has agreed to represent you in your appeal before the Board. If you are representing yourself, do **NOT** complete this part. By designating a representative, you agree to allow the Board to give your representative all information concerning the appeal. Any changes of this designation must be sent in writing to the MSPB office handling the appeal and to the other party. See 5 C.F.R. 1201.31.

34. Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

[✓] Yes *(Complete the information below and sign)*          [ ] No

DESIGNATION:

"I hereby designate _A. P. Pishevar, Esq._ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board.

| Representative's address *(number and street, city, State and ZIP code).* | Representative's telephone numbers *(include area code)* and e-mail address: |
|---|---|
| Address: 600 East Jefferson St, Suite 316 | Office: (301) - 279 - 8773 |
| City, State, Zip code: Rockville, MD 20852 | FAX: (301) - 279 - 7347  Other: |
| | E-mail address: Afshin@ hyperoffice.com |

### SIGN BELOW TO MAKE YOUR DESIGNATION OF REPRESENTATIVE EFFECTIVE

_____          _MARCH 22, 2006_
Appellant's Signature                              Date

Attachment E



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380-1775

IN REPLY REFER TO:

12713
ARHA
9 May 2006

From:  Deputy Equal Employment Opportunity Officer, Headquarters,
       Marine Corps, 2 Navy Annex, Washington DC  20380-1775

To:    Mr. A. P. Pishevar, Esq., Pishevar and Associates, P.C.
       600 East Jefferson Street, Jefferson Plaza, Suite 316
       Rockville, MD  20852

Subj:  NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MR. UJUCHRIS OKEREH,
       V. DONALD C. WINTER, SECRETARY OF THE NAVY, DON DOCKET
       NO. 06-00027-00742

Ref:   (a) Your formal discrimination complaint dated 14 April 2006
       (b) Notice of Receipt of Discrimination Complaint dated
           26 April 2006
       (c) 29 CFR § 1614

Encl:  (1) EEO Counselor's Report of 8 May 2006
       (2) Notice of Appeal/Petition (EEOC Form 573)

1.  The receipt of your formal complaint of discrimination (reference
(a), was acknowledged by reference (b), and assigned Docket Number
DON (MC) 06-00027-00742.

2.  Based upon my review of reference (a) and enclosures (1) and (2),
and in accordance with reference (c), I am hereby dismissing your
discrimination complaint for the following reasons:

    a.  You allege discrimination based on race (Black), color
(Black) and National Origin (Nigerian) when on 6 March 2006, you were
terminated from your position of Logistic Management Specialist, GS-
0346-13, with Installation and Logistics, LPO-2, Headquarters U.S.
Marine Corps.  On 3 April 06, an appeal was filed with the Merit
Systems Protection Board (MSPB) (Docket Number DC-0432-06-0432-I-1)
alleging that you were discriminated against based on race (Black) and
National Origin (Nigerian) when you were terminated on 6 March 06.
Under the provisions of reference (c), para 1614.107(a)(4), your appeal
of 3 April 06 with the MSPB is considered your election to pursue the
action with the MSPB.

3.  As you are not a prevailing party, no attorney fees are awarded in
connection with your discrimination complaint.

4.  This is the final Department of Navy decision on your complaint.
If you are dissatisfied with the decision to dismiss your complaint,
you may file a notice of appeal with the Equal Employment Opportunity
Commission ("the Commission") within thirty (30) calendar days of your
receipt of this decision.  Enclosure (2) should be used when filing
your appeal.  The appeal form should be submitted to:

                Director, Office of Federal Operations
                Equal Employment Opportunity Commission
                P.O. Box 19848

E

Washington, D.C. 20036
Subj:  NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MR. UJUCHRIS OKEREH,
       V. DONALD C. WINTER, SECRETARY OF THE NAVY, DON DOCKET
       NO. 06-00027-00742

5.  At the same time that you file your appeal with the Commission, you
MUST provide a copy of the appeal and all supporting statements to this
office at (EEO Office Address), within 30 calendar days of filing the
Notice of Appeal, enclosure (2).

6.  An appeal shall be deemed filed on the day it is postmarked, or, in
the absence of a postmark, on the date it is received by the
Commission.  The 30 calendar-day time limit within which an appeal must
be filed will not normally be extended by the Commission.  If the
appeal is not submitted within the time limit, the Commission may
extend the time limit if a written explanation showing that you were
not notified of the prescribed time limit, were not otherwise aware of
it, or circumstances beyond your control prevented you from filing the
Notice of Appeal within the prescribed time limit.  A copy of your
explanation must be forwarded to the EEO Office.

7.  If you elect not to appeal to the Commission, you may file a civil
action in an appropriate U.S. District Court within 90 calendar days of
your receipt of this decision.  Filing a civil action will result in
termination of the administrative processing of your complaint.

8.  If you file a civil action under Title VII of the Civil Rights Act
of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and
do not have, or are unable to obtain the services of a lawyer, you may
request the court to appoint a lawyer to represent you.  In such
circumstances as the court may deem just, the court may appoint a
lawyer and may authorize the commencement of the action without the
payment of fees, costs, or security.  Any such request must be made
within the above-referenced 90 calendar day time limit, for filing suit
and in such form and manner as the court may require.  Filing a request
for an attorney does not extend your time in which to file a civil
action.  Both the request and the civil action must be filed within 90
calendar days from the date you receive this decision.

9.  If you file an appeal with the Commission, you may still file a
civil action in U.S. District Court within thirty (30) calendar days of
your receipt of the Commission's final decision on your appeal.  A
civil action may also be filed any time after 180 calendar days from
the date of filing your appeal to the Commission, if a final decision
has not been issued by the Commission's Office of Federal Operations.

10.  You are further notified that if you file a civil action, you must
name Donald C. Winter, Secretary of the Navy, as the defendant.  You
must include the name of the person and the official title.  Failure to

Subj:   NOTICE OF DISMISSAL OF FORMAL COMPLAINT OF MR. UJUCHRIS OKEREH,
        V. DONALD C. WINTER, SECRETARY OF THE NAVY, DON DOCKET
        NO. 06-00027-00742


name the current, Secretary of the Navy, may result in loss of
potential entitlement to judicial redress.

Sincerely,

J. Johnson
Deputy Equal Employment Opportunity
Officer
Headquarters, United States Marine Corps

Enclosures

Attachment F

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

UJUCHRIS OKEREH,                         DOCKET NUMBER
       Appellant,                      DC-0432-06-0432-I-1

    v.

DEPARTMENT OF THE NAVY,                  DATE: November 3, 2006
       Agency.


A.P. Pishevar, Esquire, and Yona Shleyner, Esquire, Rockville, Maryland,
    for the appellant.

Thomas A. Damisch, Washington, D.C., for the agency.

**BEFORE**
Sherry A. Zamora
Administrative Judge

**INITIAL DECISION**

On March 31, 2006, the appellant timely filed an appeal of the agency's
action removing him from Federal employment. Appeal File (AF), Tab 1. The
Board has jurisdiction over this appeal. *See* 5 U.S.C. § 4303(e) and 5 C.F.R.
§ 432.106(a). For the following reasons, the agency's action is AFFIRMED.

BACKGROUND

At the time of his removal for unacceptable performance, the appellant
occupied the position of Logistic Management Specialist, GS-0346-13,
Installation and Logistics (I & L) Department, Department of the Navy (agency),

in Washington, D.C.  Agency File (Ag. File),[1] Tab 4J.  By letter dated April 15, 2005, the agency notified the appellant that the performance of his duties was deficient and required improvement.[2]  *Id.* at Tab 4I.   By letter dated September 15, 2005, the appellant's supervisor, Lt. Col. David E. Eskelund, Team Leader in the Logistics Plans and Operations Center (LPO-2), Military Sealift Command, Naval District Washington, and the appellant's first-level supervisor, informed the appellant that his work performance was unacceptable in one or more critical elements.  *Id.* at Tab 4G.  By letter dated November 14, 2005, the appellant's supervisor notified the appellant that his performance was deficient in four critical elements and that he was being placed on a performance improvement plan (PIP) for a 30 day period and, during this period, the appellant would have an opportunity to improve his performance.  *Id.* at Tab 4E.  By letter dated January 19, 2006, the appellant's supervisor informed the appellant that he had "failed to achieve the required level of performance in any of the specific critical elements."  *Id.* at Tab 4D, Page 1.  Lt. Col. Eskelund  proposed the appellant's removal for unacceptable performance in three critical elements, "Execution of Duties," "Resource Management," and "Communications," pursuant to 5 U.S.C. Chapter 43.  *Id.* The proposal notice advised the appellant of his right to respond to the agency's action and the right to be represented.  *Id.* The appellant's attorney submitted a written reply on the appellant's behalf by letter dated February 10, 2006.  *Id.* at Tab 4C.  By letter dated March 3, 2006, Colonel J. W. Simmons, the deciding official, found that the appellant's removal from Federal service was warranted.  *Id.* at Tab 4B.  The appellant was removed effective March 6, 2006.  *Id.* at Tab 4A.  This appeal ensued.  AF, Tab 1.

---

[1] The agency file is found in the appeal file at tab 5.

[2] The appellant had been previously informed of performance deficiencies unrelated to this appeal. Ag. File, Tab 4H, 4I.

The appellant denies that his performance was unacceptable and asserts that he was not provided with a reasonable opportunity to improve his performance. *See, e.g.,* AF, Tabs 11, 12, and 27. During the prehearing conference, the appellant challenged, for the first time, whether the agency's action was taken under a performance appraisal system approved by the Office of Personnel Management (OPM) and whether the agency's performance standards were valid. AF, Tab 27.

The appellant further alleges several affirmative defenses. First, the appellant argues that the agency's action was motivated by discrimination based on race, color, and national origin. *Id.* at 1, 11, 19, and 27. The appellant further alleges harmful procedural error based on his assertion that the agency failed to comply with an agency directive. *Id.* Finally, the appellant contends that the agency's action was taken in retaliation for disclosures protected under 5 U.S.C. § 2302(b)(8). *Id.* The agency denies the appellant's allegations. *Id.* at Tabs 5, 13, 23, and 27. A hearing was held at the appellant's request. AF, Tabs 1 and 6. All of the evidence and argument submitted during adjudication of this appeal has been fully considered.

## ANALYSIS AND FINDINGS

### Legal Standard

To prevail in a performance-based action under 5 U.S.C. § 4303, the agency must prove by substantial evidence that it: (1) it took its action under a performance appraisal system approved by OPM; (2) the agency had valid performance standards and those standards, along with the critical elements of the employee's position, were communicated to him; (3) the employee's performance was found to be unacceptable in one or more critical elements of his position; and (4) the agency afforded the employee a reasonable opportunity to improve his performance. 5 U.S.C. § 7701(c)(1)(A); 5 C.F.R. § 432.104. *See Martin v. Federal Aviation Administration*, 795 F.2d 995, 997 (Fed. Cir. 1986); *Daigle v.*

OCT-29-2007 09:47     OFFICE OF COUNSEL FOR CMC        760 695 0315    P.05
Case 1:07-cv-01552-RJL    Document 8-8    Filed 04/09/2008    Page 5 of 52

4

*Department of Veterans Affairs*, 84 M.S.P.R. 625, 630-31 (1999); *Belcher v. Department of the Air Force*, 82 M.S.P.R. 230, 232-33 (1999); *Greer v. Department of the Army*, 79 M.S.P.R. 477, 482 (1998); *Kadlec v. Department of the Army*, 49 M.S.P.R. 534, 539 (1991). Substantial evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. It is a lower standard than preponderance of the evidence. *See* 5 C.F.R. § 1201.56(c)(1). An agency need not present evidence that is more persuasive than that presented by the appellant. *See Lovshin v. Department of the Navy*, 767 F.2d 826, 844 (Fed. Cir. 1985); *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 624 (1984). Moreover, an agency may remove an employee under 5 U.S.C. Chapter 43 for unacceptable performance in a single critical element. *See Leonard v. Department of Defense*, 82 M.S.P.R. 597, 599 (1999); *Stenmark v. Department of Transportation*, 59 M.S.P.R. 462, 467 (1993). Finally, an agency need not show that removal promotes the efficiency of the service. *Id.*

As noted above, the appellant has raised several affirmative defenses including discrimination, harmful procedural error, and retaliation for protected disclosures. *Id.* at 1, 11, 19, and 27. The appellant was advised of the burdens of proof applicable to these affirmative defenses. AF, Tabs 9, 15, and 27. It is the appellant's burden to establish his affirmative defenses by preponderant evidence. *See* 5 C.F.R. § 1201.56(c)(2).

The agency has proven its charge by substantial evidence.

As discussed above, the agency must prove by substantial evidence that: (1) it took its action under a performance appraisal system approved by OPM; (2) the performance standards were valid; (3) the appellant's performance in at least one critical element was deficient as charged; and (4) it provided the appellant with a reasonable opportunity to demonstrate acceptable performance

prior to effecting the removal action. *See, e.g., Martin*, 795 F.2d at 997; *Daigle*, 84 M.S.P.R. at 630-31.

Performance Appraisal System. In regard to element one, the agency asserts that it took its action under a performance appraisal system approved by OPM. The record contains a letter from OPM, dated January 31, 1996, wherein OPM informed the agency that its new performance appraisal system for all non-SES Department of Defense employees was approved. Ag. File, Tab 4L. The letter is signed by Doris Hausser, Chief, Performance Management and Incentive Awards Division, Office of Labor Relations, Workforce Performance. *Id.* The appellant asserted for the first time at the prehearing conference that the agency's performance appraisal system was not properly approved. AF, Tab 27. However, he offered no evidence or other argument during the prehearing conference or at the hearing to support his conclusory allegation. At hearing, the agency referenced the letter from OPM. Ag. File, Tab 4L. Lt. Col. David Eskelund testified that this letter was located on OPM's current website. Nonetheless, the appellant argued at hearing that this letter was not sufficient evidence. However, the Board has held that a letter from OPM. stating that it had approved the agency's performance management system plan satisfied the agency's burden of affirmatively showing, by substantial evidence, that it had received OPM approval before undertaking the personnel action at issue. *See Satlin v. Department of Veterans Affairs*, 60 M.S.P.R. 218, 222 (1993). *See also Griffin v. Department of the Army*, 23 M.S.P.R. 657, 661-63 (1984). Thus, I find that the agency has established this element by substantial evidence.

Performance Standards: To remove an employee for unacceptable performance under 5 U.S.C. Chapter 43, the agency must prove, *inter alia*, that the appellant's performance standards are valid. *See Jackson-Francis v. Office of Government Ethics*, 103 M.S.P.R. 183, 186 (2006); *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73 (2001). Absent valid performance standards, the Board cannot consider charged performance deficiencies. *See Ortiz v.*

*Department of Justice*, 46 M.S.P.R. 692, 695 (1991). The appellant summarily asserted for the first time during the prehearing conference that his performance standards were not valid. AF, Tab 27. He offered no evidence or other argument during the prehearing conference or at hearing in support of his conclusory allegation. *Id.* At no time has the appellant raised any specific allegations challenging the validity of the agency's performance standards.

The applicable statute requires that the performance standards must, to the extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria. 5 U.S.C. § 4302(b)(1). *See Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, 17-18 (2004). The Board has held that managers of federal agencies have the authority to decide what agency employees must do in order to perform acceptably in their particular positions. *Id.* at 18. *See also Kruger v. Department of Veterans Affairs*, 95 M.S.P.R. 471, (2004), *aff'd*, 154 Fed. Appx. 925 (Fed. Cir. 2005) (Table) (agency is entitled to use its managerial discretion in establishing the performance standards by which an employee's performance is to be measured). Thus, the Board has found that an agency is free to set its performance standards in a manner it deems appropriate so long as those standards are objective and comply with the other express requirements of 5 U.S.C. § 4302(b)(1). *See Jackson*, 97 M.S.P.R. at 18-19. As noted above, the appellant offered no evidence or argument to support his conclusory allegation that the agency's performance standards were invalid.

As noted above, by letter dated November 14, 2005, the appellant's supervisor notified the appellant that his performance was deficient in four critical elements and that he was being placed on a 30-day PIP. *Id.* at Tab 4E. The critical elements at issue were "execution of duties," "organizational support," "resource management," and "communications." Id. By letter dated January 19, 2006, the appellant's supervisor noted that the appellant failed to achieve acceptance performance in any of the named elements and he proposed the appellant's removal for unacceptable performance in three of the critical

elements, including "Execution of Duties," "Resource Management," and "Communications." *Id.* at Tab 4D.

As noted above, other than his summary conclusion, the appellant presented failed to present any specific arguments as to indicate specifically how the performance standards for the three critical elements at issue were improper. I have reviewed the standards and find that they meet the guidelines as set forth by law. Ag. File, Tabs 4F and 4I. They clearly inform the appellant as to what is necessary to demonstrate acceptable performance and they appear reasonable in light of the appellant's job responsibilities. *Id.* For example, in regard to the first element, "Execution of Duties," the agency's performance standard indicates that, to be "acceptable," the employee demonstrates the following performance:

> Completes work assignments in a timely manner, assuring a quality of work that meets the needs of the section goals and objectives or division missions. Develops solutions to problems, which demonstrate improvements in work methods. Supports and conforms to policy, procedures and regulations.[3]

*Id.* at Tab 4F. The appellant testified that Lt. Col. Eskelund went over all of the critical elements in their "performance appraisal discussions." Lt. Col. Eskelund testified consistently that he discussed each of the critical elements with the

---

[3] I note that the performance evaluation for fiscal year 2006 in which this element is listed is not signed. Ag. File, Tab 4F. Lt. Col. Eskelund stated that it was not signed because the evaluation with the appellant occurred off-site. However, as noted herein, the appellant testified that Lt. Col. Eskelund went over all of the critical elements in their "performance appraisal discussions." In addition, attached to the performance evaluation is a note regarding counseling given the appellant in regard to his performance. *Id.* at Page 3. Lt. Col. Eskelund testified that this was a note he made subsequent to his discussions with the appellant. In that note, the witness stated that, on October 5, 2005, he counseled the appellant that his performance was "unsatisfactory" and "unsuccessful." *Id.* As there is no dispute between testimony from the appellant and Lt. Col. Eskelund, I find that this element was communicated to the appellant. Further, in the PIP, the agency listed the standard for this element. *Id.* at 4E, Page 2. The appellant did not dispute receipt of the PIP and its attachments. Thus, I find that the standard for this appellant was adequately communicated to the appellant.

OCT-29-2007 09:47     OFFICE OF COUNSEL FOR CMC          760 695 0315     P.09
Case 1:07-cv-01552-RJL     Document 8-8     Filed 04/09/2008     Page 9 of 52

8

appellant.  Further, the standard for acceptable performance for this element was
expressly supplied in the agency's PIP issued to the appellant on November 14,
2005.  *Id.* at Tab 4E, Page 2.  The appellant does not dispute receipt of this
element.  The standard for this element does permit the accurate evaluation of job
performance on the basis of objective criteria and provides a benchmark toward
which the appellant could direct his performance.  There is no demonstrated or
evident issue with this performance standard.

Similarly, for the other two performance standards at issue, for the critical
elements of "Resource Management" and "Communications," the standards were
provided to the appellant several times.  First, as stated above, the appellant
testified that Lt. Col. Eskelund went over all of the critical elements in their
"performance appraisal discussions."  Lt. Col. Eskelund testified consistently that
he discussed each of the critical elements with the appellant.  Further, the
appellant signed for receipt of these two elements in an earlier performance
appraisal.  *Id.* at Tab 4I.  In addition, the standard for acceptable performance for
this element was expressly supplied in the agency's PIP issued to the appellant on
November 14, 2005.  *Id.* at Tab 4E, Page 3.  I have reviewed the standards for
these two elements.  *Id.* at Tabs 4E and 4I.  I find that they permit the accurate
evaluation of job performance on the basis of objective criteria and they both
provide a benchmark toward which the appellant could direct his performance.
As noted above, other than his conclusory assertion that the performance
standards were invalid, the appellant identified no specific issue with any of the
performance standards involved in this appeal.  There is no demonstrated or
evident issue with these two performance standards.  Accordingly, I find that the
appellant's performance standards are valid.

Appellant's Performance:  As stated above, to establish its case by
substantial evidence, the agency must establish that the appellant's performance
in at least one critical element was deficient as charged.  *See Kadlec*, 49 M.S.P.R.
at 539.  The agency's removal action was based on its determination that the

appellant's performance was deficient in three critical elements. Ag. File, Tabs 4E, 4F, and 4I. Lt. Col. Eskelund testified that he reviewed his expectations extensively with appellant and, in the PIP, he provided examples as to how successful performance could be achieved. *Id.* at Tab 4E. The witness asserted that he wanted to avoid any question or confusion by the appellant as to how he could achieve successful performance and he viewed the PIP as a "reference document" that the appellant could refer to during the PIP period. Thus, he provided the examples, cited herein, as to how the appellant could achieve successful performance. However, he testified that the appellant failed to demonstrate acceptable performance in any of the critical elements at issue during the PIP period or at any time prior to his termination.

*Critical Element 1, "Execution of Duties."* This element encompassed the following standard for acceptable performance:

> Completes work assignments in a timely manner, assuring a quality of work that meets the needs of the section goals and objectives or division missions. Develops solutions to problems, which demonstrate improvements in work methods. Supports and conforms to policy, procedures and regulations.

*Id.* at Tab 4F.

Lt. Col. Eskelund stated that his division, LPO-2, was responsible for the logistics of maritime prepositioning which involved positioning military equipment around the world to ensure its availability if quickly needed. He said that his division was responsible for the attainment of prepositioning sites and obtaining the necessary funding. The program was funded at approximately $90 million although the majority of the funds were expended by the Blount Island Command in Jacksonville, Florida, where the restocking and refurbishment of equipment occurs. The witness testified without dispute that, as a GS-13 Logistic Management Specialist, the appellant was responsible for the financial aspect of the programs under his direction. He regularly participated in fiscal planning

meetings and was responsible for, *inter alia*, budgeting and other financial matters.

Accordingly, Lt. Col. Eskelund testified that, during the PIP period, he tasked the appellant with preparing and presenting a briefing regarding the Planning of Monies (POM)[4] for fiscal year 2008. He stated that this was necessary to ensure that the organization received adequate funding for 2008 programs. The witness assigned the appellant to provide POM training to the staff. He stated without dispute that he advised the appellant to confer with Lt. Col. Russell at Logistic Resource Management (LSR) to obtain any required information. The record reflects an electronic mail message from the appellant to Lt. Col. Russell as well as other employees in which the appellant requested information about POM "processes and format." *Id.* at Tab 4D, Pages 43-44. Lt. Col. Russell responded to the appellant, offered his assistance, and told him where to come to see him. *Id.* at Page 43. The appellant offered no information as to whether he met with Lt. Col. Russell to obtain information about POM so that he could properly present the briefing as he was directed. Regardless, Lt. Col. Eskelund testified without dispute that, when the staff met for the briefing by the appellant, the appellant read off of a page for approximately 30 seconds and provided no information for the team members as to how to contribute to the objective of ensuring that the program was adequately funded for 2008. The witness stated that he personally went to Lt. Col. Russell and met with him for approximately 45 minutes and Lt. Col. Russell explained the entire process to him. He then returned to his office and gave the staff a 30-45 minute class using a whiteboard and showing the timeline applicable for the POM process. Lt. Col. Eskelund stated that, after the class, he dismissed everyone

---

[4] I note that, in the agency's proposal to remove, POM is indicated to stand for "Program Objective Memorandum." Ag. File, Tab 4D, Page 4. Regardless of which is the correct title, it is clear that the PIP and the testimony from Lt. Col. Eskelund referenced the same work task.

except Lt. Col. Freeman and the appellant and he explained to the appellant that he had demonstrated what he had expected from the appellant when he was tasked with providing this training. The testimony by Lt. Col. Eskelund is corroborated by a log that the witness maintained in his personal computer regarding the appellant's work assignments and interactions with the appellant. AF, Tab 19, Appellant's Exhibit I-1. The log regarding this issue was dated on November 22 and November 23, 2005, and appeared to be prepared contemporaneously with the events as discussed herein. *Id.* Lt. Col. Eskelund asserted that, given the appellant's grade and job duties, he should have been able to prepare a briefing for the staff regarding the funding process at issue. The appellant offered no evidence or argument to refute the testimony of Lt. Col. Eskelund. He further offered no explanation or justification for why the briefing he offered, on a matter of budgetary procedures of which he should be familiar, was so limited and the briefing by Lt. Col. Eskelund was significantly longer and likely more detailed.

As noted above, Lt. Col. Eskelund testified that he provided information for the appellant in the PIP as to how he could demonstrate acceptable performance. In regard to critical element 1, the PIP informed the appellant that successful performance could be achieved by, i.e., "[s]ubmitting work that is on time, professional in appearance and content, but most of all, grammatically correct." Ag. File, Tab 4E, Page 2. The appellant was specifically advised that Lt. Col. Eskelund expected that "all future assignments be submitted ... on time or ahead of schedule." *Id.* In addition, the appellant was informed that his work "should have no more than a total of 3 typographical errors or misspelled words." *Id.*

As an example of his unacceptable performance during the PIP period, Lt. Col. Eskelund stated that the appellant was responsible for several spreadsheets for agency activities that were broken into two separate funding categories including operations and maintenance as well as travel costs. The appellant's supervisor testified that the appellant's work quality never reached an

acceptable level during the PIP period or prior to the appellant's removal from Federal service. He stated that the spreadsheets were incorrect and, although he advised the appellant to seek counsel from Lt. Col. Robert Freeman, a mobilized reservist stationed at the appellant's duty station who was "very oriented toward spreadsheets," he did not see any improvement by the appellant on the spreadsheets.

Lt. Col. Eskelund further testified that grammatical and typographical errors on the appellant's work product submitted during the PIP period were "significant." He stated that the appellant's documents had "significant amounts of grammatical and typographical errors that ended up causing significant delays." In addition, the witness testified that the content in the appellant's work products were unclear, that significant work was needed by other employees to finish the appellant's work products, and that the time needed to correct the appellant's work delayed completion of the agency's final products. Lt. Col. Eskelund's testimony was corroborated by Lt. Col. Freeman who stated at hearing that he was generally tasked with final editing of work products for their division. Lt. Col. Freeman consistently testified that the appellant's work products contained significant typographical errors as well as other errors in content.

As a specific example of the appellant's poor performance in the critical elements at issue, Lt. Col. Eskelund referenced a project, a "Fiscal Policy Message," which addressed funds obligated for certain agency programs. The memorandum at issue was to advise involved parties that, if an organization within the agency intended to spend previously allocated funds for other programs, a request had to be made through his office because his office was responsible for providing information for congressional inquiries and other reports as to how funds were spent. The witness stated that, on October 10, 2005, he tasked the appellant with drafting a memorandum advising other components within the agency that a request to reallocate funds would have to come through his office. Lt. Col. Eskelund testified that he provided the appellant with a note

13

indicating what information was required for this memorandum and he gave the
appellant a deadline of 10 days, which was October 20, 2005, to complete the
memorandum.    The witness stated that, as of December 15, 2005, the
memorandum had not been released.   Thus, the appellant failed to meet one
component of critical element 1, "Execution of Duties," as he failed to complete
his work assignment within a timely manner.  *Id.* at Tab 4F. The appellant was
specifically advised in the PIP by Lt. Col. Eskelund that he expected that "all
future assignments be submitted ... on time or ahead of schedule." *Id.* at Page 2.

Lt. Col. Eskelund stated that, when he questioned the appellant about the
uncompleted project on December 12, 2005, the appellant indicated that he had
encountered difficulties in obtaining required information from LSR and P&R.
The appellant informed Lt. Col. Eskelund at that time that he should not be held
responsible for their lack of responsiveness. However, Lt. Col. Eskelund testified
at hearing that the appellant did not advise him of any problems in obtaining
information from these organizations nor did he seek his assistance in getting the
required information.   Thus, the appellant brought no issues to his attention
within the 10 day period during which he was tasked with completing the project.
In the PIP, the appellant was specifically advised that he was "to report directly
to [Lt. Col. Eskelund] for any problems relating to [his] performance." *Id.* at
Tab 4E, Page 1.  In addition, they had weekly meetings as well as regular staff
meetings. Lt. Col. Eskelund testified that the appellant never advised him of any
issues encountered in completing the memorandum for the "Fiscal Policy
Message," during the time allotted.

Lt. Col. Eskelund further testified that the appellant's initial submission of
this project was unacceptable grammatically, it had missing and incorrect
addresses, and it did not reflect required communication between his office and
two other divisions, Logistic Resource Management (LRM), and P & R
(Programs and Resources). The appellant's initial memorandum is found in the
agency file and reflects extensive editing corrections. *Id.* at Tab 4D, Pages 10-

11.  There are multiple misspelled words including, for example, the following misspelled words: "unanimouslly," "dicission," "concorred," and "veiw." There are evident grammatical issues. For instance, the word "advice" was used where the proper word would be "advise" and the phrase, "consensus were reached," should properly read, "consensus was reached." *Id.* In addition, Lt. Col. Eskelund testified that the memorandum contained addresses for recipients which were improperly included and had to be deleted and it was missing the addresses of required recipients. As noted above, the performance standard for critical element 1 required that the appellant assure that he presented "a quality of work that meets the needs of the section goals and objectives or division missions." *Id.* at Tab 4F. Lt. Col. Eskelund testified that the appellant's work product could not be issued as it would poorly represent work from his department. The appellant was advised in the PIP that, to demonstrate successful performance, he should submit work with no more than three typographical errors and that is "most of all, grammatically correct." *Id.* at Tab 4E, Page 2. Clearly that standard was not met with this work product.

     The appellant offered nothing at hearing to dispute the issues raised by Lt. Col. Eskelund in regard to this work product. He testified that he did complete the initial draft but did not dispute his supervisor's assertion that it was untimely and was replete with spelling and grammatical errors as well as errors regarding the correct addressees for the memorandum. He did state that he ran all of his work products through "spell check" but, regardless, it is clear that there are many misspelled words. Further, it is undisputed there are multiple grammatical errors which could be corrected with proper editing. Thus, I find that this product provides an example of unacceptable performance in regard to element 1, "Execution of Duties."

     Lt. Col. Eskelund further testified about another work product by the appellant during the PIP which failed to demonstrate acceptable performance. He stated that he and the appellant attended a conference wherein an Executive

Committee (EXCOM) had requested an "executive summary of fiscal procedures." The witness stated that, on November 8, 2005, he tasked the appellant with preparing this summary and he required it to be completed within three days which would have been November 11, 2005. He explained that an executive summary is a summary of a program or a description for "higher levels" to look at to develop an understanding of program.

The appellant's supervisor asserted that he instructed the appellant to obtain information from another command, Blount Island, and prepare a "fiscal 101" brief about fiscal procedures for the program. The witness stated that the appellant sent an electronic mail message to an employee at the Blount Island Command and asked for "executive brief 101." He stated that he got a telephone call from the employee at Blount Island and they did not understand what the appellant was requesting. The witness asserted that he instructed the appellant to request a "fiscal 101 brief" but the appellant instead requested an "executive 101 brief." Lt. Col. Eskelund testified that he informed the employee at Blount Island that the fiscal 101 brief was requested. The correct document was provided and the appellant's initial submission on this project was submitted on November 14. 2005. *Id.* at Page 14. Thus, it was untimely and failed to comply with the performance standard in element 1, "Execution of Duties," that work be submitted in a timely manner. *Id.* at Tab 4F.

Further, the supervisor testified at hearing that the document was unacceptable, especially since it would be forwarded to their counterparts in Norway as well as the membership of EXCOM and, thus, would reflect work produced by his department. Specifically, he stated that the document failed to reflect the standard format for executive summaries. The witness further asserted that the appellant simply pasted into the document information contained in prior subgroup meetings which was not information relevant for an executive summary at the EXCOM level. Lt. Col. Eskelund stated that he personally returned this document to the appellant. He advised the appellant to see Victor Splan, a

contractor working in the cubicle next to the department, as he had previously prepared an executive summary that was acceptable and would be good example for appellant. However, the witness stated that the second draft from the appellant was still unacceptable. *Id.* at Tab 4D, Pages 16-18. The draft reflects extensive editing noting missing and incorrect information. *Id.* Lt. Col. Eskelund asserted without dispute that the date and subject line, for example, would never go on the first page according to basic naval correspondence. In addition, he stated that the "To" reflected that the summary was going to the Director of Logistics Plans but it was going to the co-chairs of EXCOM. Further, the witness stated that the draft included basic information which EXCOM did not need but omitted information about major issues. The supervisor stated that the appellant prepared multiple drafts of this document and, at one point, the appellant simply gave him a draft that he had already reviewed and rejected. In sum, he noted that the appellant's initial draft contained very little information and the next draft was "bogged down with very detailed information" that would only raise more questions. *Id.* at Pages 14-18. The appellant never presented a product satisfactory for issuance. Lt. Col. Eskelund stated that this work product demonstrated unsuccessful performance in regard to the critical element involving the appellant's execution of his duties as it was untimely and reflected a poor quality of work. The supervisor stated that the appellant never came to him and notified him of any problems nor did he request any assistance.

The appellant provided little testimony regarding this work product. He conceded that it was a project he worked on during the PIP period and that it did require multiple drafts although it did not recall how many times it was returned to him for corrections. The witness asserted that Lt. Col. Eskelund did not instruct him to get a sample from Mr. Splan until after he submitted his first draft. Regardless, the appellant presented no evidence that an acceptable work product was produced in regard to this task. He was specifically informed in the PIP that it was expected that all future assignments be submitted on time or ahead

of schedule and that editing changes should reflect only minor changes in tone or word preference. *Id.* at Tab 4D. The appellant offered no explanation for the untimely submission of this document or the major revisions required. It is clear that this work product was untimely and did not reflect quality work as it required major revisions.

The appellant offered no examples of acceptable work product produced during the PIP period nor did he present any evidence that he had complied with the performance standard in this element that, for example, he produce quality work assignments within established deadlines. Based on the examples presented by the agency and the lack of sufficient explanations from the appellant, I find that the agency established by substantial evidence that the appellant's performance in this critical element was unacceptable.

As noted above, the agency is required to demonstrate that the appellant's performance is deficient in only one critical element. *See Leonard*, 82 M.S.P.R. at 599; *Stenmark v. Department of Transportation*, 59 M.S.P.R. 462, 467 (1993). Based on my determination that the appellant's performance in the critical element of "Execution of Duties" was unacceptable, the agency has presented sufficient evidence to find that the appellant's performance was acceptance in at least one critical element. Nonetheless, I will briefly review the other two critical elements at issue.

*Critical Element 4, "Resource Management."* This critical element included the following standard for acceptable performance:

> Monitors allocated funds and maintains complete and accurate records of expenditures. Utilizes resources in an efficient and effective manner. Ensures that funds, property and resources are guarded against fraud, waste, loss and unauthorized misappropriations.

*Id.* at Tabs 4F and 4I. Lt. Col. Eskelund testified that, prior to the PIP, he had observed budget discrepancies resulting from incorrect coding and other problems. He had further observed the appellant make improper budget requests

during times of continuing resolutions when funds were expended on a very limited basis. Accordingly, he instructed the appellant to meet at least weekly with his counterpart in LSR to reconcile budget information to ensure its accuracy. The witness stated that LSR was the "final step" to determine a "true picture of where funds were." He asserted that, if LPO-2 had used funds which were not showing up in LSR, they would show up as "unobligated funds" even though spending had been authorized. Thus, he stated that consistent reconciliation with LSR was critical to ensure that spending records were accurate and that discrepancies between LPO-2 accounting and LSR were avoided.

In the PIP, Lt. Col. Eskelund informed the appellant that there had been problems with the appellant's work assignments in relation to budgeting and spending. *Id.* at Tab 4E. Accordingly, he informed the appellant that successful performance in this element could be demonstrated, in part, by the appellant "having a face-to-face reconciliation with [his] counterpart(s) in LSR, at a minimum on a weekly basis." *Id.* at Page 3. Lt. Col. Eskelund informed him that "[d]oing so will ensure the accuracy of [his] current budget and reduce any confusion or misunderstanding by both parties." *Id.*

Lt. Col. Eskelund testified that, during the PIP period, he received electronic mail messages from Edward Rotchford, the appellant's counterpart in LSR. *Id.* at Tab 4D, Pages 41-42, 47. The messages referenced outstanding requests for information from Mr. Rotchford to the appellant. *Id.* The witness stated that these messages occurred during a time when the agency was operating under a continuing resolution[5] and, thus, every budget submission required

---

[5] Mr. Rotchford explained that, when operating under a "continuing resolution," the agency had not received a new fiscal year budget and was continuing to operate under the prior year's budget. As that usually meant a decrease in funds, expenditures by the agency were limited during that time and required additional documentation and other supporting information.

supporting documentation to get approval. Lt. Col. Eskelund testified that the appellant's failure to provide information to LSR was "alarming" because he had specifically tasked the appellant to reconcile with Mr. Rotchford on, at a minimum, weekly basis. He asserted that, if the proper amount of reconciliation was going on at their level, the electronic mail requests from Mr. Rotchford would not have been elevated to his level.

Mr. Rotchford testified at hearing that LSR ensures that funds for I&L are spent in accordance with law and in accordance with guidance by funding authorities. He stated that he works with 20 programs administered by Program Managers within I & L. The witness asserted that he provides guidance to Program Managers and to ensure that funds are spent timely and in accordance with law and directives. Mr. Rotchford stated that he knew the appellant was a Program Manager for four programs within I&L.

The witness testified at hearing that the appellant had made certain funding requests that required supporting documentation and other information because they occurred during a continuing resolution. He asserted that the appellant had requested travel funds in large amounts and he had previously sent guidance asking departments to only request funds for duties sensitive and critical to the agency's mission. The witness stated that he called the appellant and left a message indicating that he required more information as to why the amount of money requested was necessary at that time. Mr. Rotchford testified that the appellant did not respond to his voice mail message. Accordingly, he stated that, on November 18, 2005, he sent an electronic mail message to the appellant asking him to explain the funding request forms he had received from the appellant. *Id.* at Page 42. However, he asserted that the appellant did not respond to his electronic mail requests for additional information. The witness testified that he did not have weekly reconciliation meetings with the appellant although such meetings would have been highly beneficial due to budgeting problems encountered with the appellant. He said that he had "penciled in" a time to meet

OCT-29-2007 09:49     OFFICE OF COUNSEL FOR CMC          760 695 0315     P.21
Case 1:07-cv-01552-RJL    Document 8-8    Filed 04/09/2008    Page 21 of 52

20

appellant but that such meetings had occurred very rarely and, at most,
om the time he started at LSR in September of 2005 until the appellant's
ent termination in March of 2006.

t. Col. Eskelund testified that he spoke with Mr. Rotchford and was
that no weekly reconciliation meetings had occurred as ordered during
period.[6] This meeting was documented in Lt. Col. Eskelund's personal
rding his interactions regarding the appellant. AF, Tab 19, Appellant's
I-1. The entry for December 14, 2005, reflects a communication from
chford to Lt. Col. Eskelund indicating that no reconciliation meetings had
d. Thus, Lt. Col. Eskelund contends that the appellant failed to meet the
element of "Resource Management" because he did not reconcile with
a a consistent basis to ensure proper monitoring of the budget and
on of budgetary and fiscal requirements.

he appellant testified that he did respond to Mr. Rotchford's phone and
ic mail requests for more information. However, he did not provide
of any electronic mail messages or other documentation offered to
chford upon his request. Further, the appellant contends that he did
ate in weekly reconciliation meetings with Mr. Rotchford. He stated that
with Mr. Rotchford "just about every day" and they often sat together at



appellant but that such meetings had occurred very rarely and, at most,
om the time he started at LSR in September of 2005 until the appellant's
ent termination in March of 2006.

t. Col. Eskelund testified that he spoke with Mr. Rotchford and was
that no weekly reconciliation meetings had occurred as ordered during
period.[6] This meeting was documented in Lt. Col. Eskelund's personal
arding his interactions regarding the appellant. AF, Tab 19, Appellant's
I-1. The entry for December 14, 2005, reflects a communication from
chford to Lt. Col. Eskelund indicating that no reconciliation meetings had
d. Thus, Lt. Col. Eskelund contends that the appellant failed to meet the
element of "Resource Management" because he did not reconcile with
ı a consistent basis to ensure proper monitoring of the budget and
on of budgetary and fiscal requirements.

he appellant testified that he did respond to Mr. Rotchford's phone and
iic mail requests for more information. However, he did not provide
of any electronic mail messages or other documentation offered to
chford upon his request. Further, the appellant contends that he did
ate in weekly reconciliation meetings with Mr. Rotchford. He stated that
with Mr. Rotchford "just about every day" and they often sat together at
tchford's desk to be able to look together at Mr. Rotchford's computer.
ellant presented no witnesses to corroborate the appellant's presence at
otchford's work site "just about every day." Lt. Col. Eskelund
ledged that the appellant did go to Mr. Rotchford on occasion about
: matters but asserted without dispute that he advised the appellant that
eetings to discuss a specific matter did not constitute a reconciliation

proposal to remove, Lt. Col. Eskelund noted that he met with Mr. Rotchford on
er 14, 2005, and Mr. Rotchford had informed him that, although the appellant
itioned weekly reconciliation meetings with him as far back as October 2005,
I not begun as of that time.

meeting specifically for the purpose of reconciling the budget between LPO-2 and LSR. Regardless, Mr. Rotchford unequivocally denied that any regular meetings occurred with the appellant on any issue but, rather, stated that the appellant was largely nonresponsive to his requests for information or clarification both during and outside of the PIP period.

The testimony of Mr. Rotchford and the appellant on this matter differ greatly. Consequently, I must examine the credibility of the witnesses. Numerous factors must be considered in making and explaining a credibility determination. These include: (1) the witness' opportunity and capacity to observe the event in question; (2) the witness' character; (3) any prior inconsistent statement by the witness; (4) the witness' bias, or lack of bias; (5) the contradiction of the witness' version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness' version of events; and (7) the witness' demeanor. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). These factors have been fully considered. As will be discussed at length below, I find the appellant to lack credibility in regard to allegations made in regard to his affirmative defenses based on his inconsistent statements and the inherent improbability of his version of events. For the purposes here, I note the appellant demonstrated no motive for Mr. Rotchford to fabricate testimony. He has no stake in the outcome of this appeal and he was not named as an involved party in any of the appellant's many affirmative defenses. Further, Lt. Col. Eskelund testified that Mr. Rotchford sought him out for the financial information required. Thus, it seems highly unlikely that the appellant provided the requested information as he alleges if Mr. Rotchford was required to escalate his request to the appellant's supervisor. In contrast, the appellant has a substantial interest in the outcome of this proceeding and he presented no documentary evidence or testimony from any corroborating witnesses. Thus, I find that Mr. Rotchford is a more credible witness than the appellant.

OCT-29-2007 10:06    OFFICE OF COUNSEL FOR CMC    760 695 0315    P.02

Case 1:07-cv-01552-RJL    Document 8-8    Filed 04/09/2008    Page 24 of 52

22

Accordingly, it is my determination that the appellant did not meet
rly with Mr. Rotchford as ordered to conduct weekly reconciliation
gs.  Based on the consistent testimony of Mr. Rotchford and Lt. Col.
nd, there were regular inconsistencies and discrepancies between the
tary information maintained by the appellant for LPO-2 and the information
ined by LSR.  The appellant did not take the necessary steps to resolve and
such discrepancies.   Thus, I find the agency has presented substantial
ce that the appellant failed to properly monitor allocated funds, maintain
ete and accurate records of expenditures, or utilize resources in an efficient
fective manner.

*Critical Element 5, "Communications."*   The standard for acceptable
mance in this element is as follows:

Presents written and oral communications in a clear, correct, timely
and understandable manner; keeps supervisor and/or co-workers
informed of issues and problems; provides information and guidance
that is correct and according to regulations.

Tabs 4F and 4I.  In regard to this element, the appellant was informed that
ssful performance could be demonstrated by "[e]nsuring that [his] ability to
unicate both internally and externally is sound, rational, coherent and
natically correct." *Id.* at Page 5.  The appellant was informed that, if he was
a doubt, he should "consult the dictionary and/or thesaurus in [his] cubicle."
urther, the appellant was advised that he could seek assistance from his
ates if he encountered any situation that was beyond his ability to resolve.

In regard to his communications with Mr. Rotchford, discussed above in
n to critical element 4, Lt. Col. Eskelund testified at hearing that the
ant's failure to maintain regular contact with Mr. Rotchford demonstrated
eptable performance in the critical element of "Communications."   As
sed above, the appellant was directed to meet at least weekly with

Mr. Rotchford to resolve budgetary discrepancies between LPO-2 and LSR but
the substantial evidence demonstrates that the appellant failed to comply with this
directive.    Thus, he did not work with his co-worker to resolve the budget
problem.    Moreover, although the appellant disputes the testimony of
Mr. Rotchford, I find more credible the testimony of Mr. Rotchford that the
appellant failed to respond to his various requests for information in support of
budget requests submitted by LPO-2. Further, as discussed above, the appellant's
work product in regard to the "Fiscal Policy Message" was not timely submitted
nor was it typographically and grammatically correct.    *Id.* at Tab 4E,
Pages 10-11. In addition, it is undisputed that the appellant's work assignment
regarding the executive summary for EXCOM was also untimely, it was not
formatted correctly, and it did not contain the correct substance.    *Id.* at
Pages 14-18. These are clearly failures to meet the standard for acceptable
performance in regard to "communications." In contrast, the appellant presented
no evidence of work product completed during the PIP period which
demonstrated acceptable performance under this element. In light of the agency's
evidence, I find that the agency has established by substantial evidence that the
appellant failed to demonstrate acceptable performance in regard to this critical
element.

For the reasons stated above, I find that the agency established by
substantial evidence that the appellant was deficient in three critical elements.

Opportunity to demonstrate acceptance performance:    An agency must
demonstrate that it afforded an employee an opportunity to demonstrate
acceptable performance before it may take an action under Chapter 43.
*See Donaldson v. Department of Labor*, 27 M.S.P.R. 293, 297 (1985). The
agency may satisfy this requirement by communicating to the employee the
standards they must meet in order to be evaluated as demonstrating performance
at a level sufficient for retention. *Id.* The Board has held that an agency may
develop the content of the applicable performance standards by informing the

employee of specific work requirements through written instructions, memoranda describing unacceptable performance, and in a PIP. *See Johnson v. Department of the Interior*, 87 M.S.P.R. 359, 362 (2000); *Smith v. Department of Energy*, 49 M.S.P.R. 110, 116 (1991); *Donaldson*, 27 M.S.P.R. at 298.

As discussed above, the agency informed the appellant in writing of the performance standards for each of the critical elements at issue in this appeal. Ag. File, Tabs 4F and 4I. In addition, the appellant and Lt. Col. Eskelund both consistently testified that they discussed the applicable performance standards. In addition, in the PIP issued to the appellant on November 14, 2005, the agency articulated the standard for acceptable performance for each element and provided specific information as to how the appellant's performance had been deficient up to that time and how he could achieve successful performance. *Id.* at Tab 4E. Thus, I find that the agency's valid performance standards were adequately communicated to the appellant.

The appellant denies that he had a meaningful opportunity to improve his performance. He initially testified that there were no meetings with Lt. Col. Eskelund during the PIP in regard to his performance or for review of his work. In addition, the appellant testified that he had no recollection as to whether he was ever informed as to what the critical elements of his position entailed.

I find no merit to the appellant's assertions. The critical elements were communicated to the appellant in writing on several occasions, including performance evaluations and in the PIP. *Id.* at Tabs 4E, 4F, and 4I. Further, Lt. Col. Eskelund testified that he met regularly during the PIP period with the appellant to discuss his work assignments. Lt. Col. Freeman testified that he regularly witnessed meetings between the appellant and his supervisor, Lt. Col. Eskelund, during the PIP period during which the appellant received feedback and direction regarding his work assignments. On cross-examination, the appellant conceded that he did, in fact, meet with Lt. Col. Eskelund "almost every day" that they came to work. He specifically testified that, when they had weekly

meetings, they discussed the appellant's work assignments although he denies any discussion of his critical elements. The appellant agreed on cross-examination that they were discussing his job responsibilities and that Lt. Col. Eskelund provided assessments of his work. This was corroborated by the testimony of Lt. Col. Eskelund and Lt. Col. Freeman. Although the appellant denies discussion of critical elements, the purpose of such meetings is for the employee to get direction and feedback about their work performance. Clearly, the consistent testimony from the appellant, Lt. Col. Eskelund, and Lt. Col. Freeman, indicates that this occurred. Further, it is clear from the samples of the appellant's work products in the record that the appellant's submissions were extensively edited and returned to him. *Id.* at Tab 4E, Pages 10-11, 14-18. This is an example of another means of feedback and direction for the appellant.

The appellant argued that the 30-day improvement period was too brief and, thus, negated a reasonable opportunity to demonstrate acceptable performance. Lt. Col. Eskelund testified that he thought the PIP was "very well laid out and it was simple." He asserted that he thought a 30-day improvement period was sufficient because of the previous extensive amount of counseling, daily meetings, intensive interaction, and other guidance that the appellant had received. As evidence of this prior direction, the record reflects that, by letters dated April 15, 2005, and July 29, 2005, the appellant received two letters of "supervisory concern" wherein he was advised of areas of performance requiring improvement. Ag. File, Tab 4H, 4I. The latest letter contained attachments documenting multiple issues and their related critical elements. *Id.* at Tab 4H, Pages 5-14. I note that the attachments are not signed. *Id.* However, Lt. Col. Eskelund testified that they may have been transmitted to the appellant electronically. Regardless, the appellant initially testified at hearing that he recalled seeing them. Later, in his testimony, he said that he may have been confused because he then disputed ever seeing them. Given his inconsistent testimony throughout the hearing, I find it more likely than not that the appellant

did receive these documents. Regardless, it is not necessary that such docu:
be received in order to determine whether 30 days was sufficient for the app
to demonstrate acceptable performance.

An agency must demonstrate by substantial evidence that an employe
provided with an opportunity to demonstrate acceptable performance bei
performance-based action is taken. *See Greer*, 79 M.S.P.R. at 480; *Gjersv
Department of Treasury*, 68 M.S.P.R. 331 (1995). However, neither the s
nor the applicable regulations specify a required time period for a PIP.
5 U.S.C. § 4302(b)(6); 5 C.F.R. §§ 432.103(d), 432.104. The Board has
that a 30-day PIP was reasonable and complied with 5 U.S.C. § 4302(b)(6).
*e.g., Luscri v. Department of the Army*, 39 M.S.P.R. 482 (1989), *aff'd*, 887
1094 (Fed. Cir. 1989) (Table); *Wood v. Department of the Navy*, 27 M.S.P.R
663 (1985).

Relevant factors considered in determining whether an agency has aff
an employee a reasonable opportunity to demonstrate acceptable perforn
include the nature of the duties and responsibilities of the employee's pos
the performance deficiencies involved, and the amount of time that is suffici
enable the employee to demonstrate acceptable performance. *See Macijaus.
Department of the Army*, 34 M.S.P.R. 564, 566 (1987), *aff'd* 847 F.2d 841
Cir. 1988) (Table). In this case, Lt. Col. Eskelund testified that the appellar
given projects that could be completed within the PIP period. For instanc
"Fiscal Policy Message" was assigned to be completed within 10 days
addition, the executive summary for EXCOM was tasked to be completed v
three days. Further, the appellant was tasked with meeting weekly
Mr. Rotchford. The substantial evidence of record is that none of these
were completed during the PIP period. The appellant offered nothing to di
that these tasks could have been successfully completed during the PIP p
Further, the deficiencies for which the appellant was removed largely inv
timeliness of assignments, grammar and spelling issues, formatting,

communications with other agency employees. It appears that these deficie
could have been cured during the 30-day period at issue. Further, the app
has provided no specific allegations or evidence that an extended PIP ɪ
would have had a positive material effect on his performance deficiencies.

In sum, I find that the agency advised the appellant of the required sta
for acceptable performance, provided guidance as to how to obtain that le
performance, and provided the appellant with a reasonable time to impro
performance. Thus, I find that the agency provided the appellant v
reasonable opportunity to demonstrate acceptable performance.

Based on the above, I find that the agency has established by subs
evidence that it took its action under a performance appraisal system appro
OPM, that it had valid performance standards and that they were commur
to the appellant along with the critical elements applicable to his positio
the appellant's performance was unacceptable in one or more critical ele
and that it afforded the appellant a reasonable opportunity to demo:
acceptable performance. Accordingly, the agency's charge of unacce
performance is sustained.

<u>The appellant failed to establish his affirmative defense of discrimination.</u>

As discussed above, the appellant asserts that the agency's action v
result of discrimination based on race, color, and national origin. The ap
alleges direct discrimination as well as disparate treatment and disparate im

*Direct Discrimination:* The appellant contends that he suffered
discrimination in the workplace. To prove a discrimination claim by
evidence, the appellant must show that his membership in a protected ca
was a "motivating factor" in the removal action at issue. *See Jones v. Depc
of the Army*, 68 M.S.P.R. 398, 403 (1995).

First, I note that all agency witnesses, including the appellant, testifi
they worked in a relatively small area. The appellant stated that he work
cubicle which was approximately 4 feet by 4 ½ feet. He estimated the ent

of the area for LPO-2 personnel as 50 x 36 feet approximately. The appellant stated that he did not know the exact number of people who worked in the space because employees in other divisions would work shift work in the area. The appellant stated without dispute that the cubicle to his right was assigned to a contractor, Victor Splan, and the cubicle on his left was assigned to Lt. Col. Freeman. Major David Loyack was on the left side of Lt. Col. Freeman and Lt. Col. Eskelund's office door was "almost directly" across from the entrance to Lt. Col. Freeman's cubicle. The appellant stated that his cubicle was less than approximately eight feet from Lt. Col. Eskelund's door. When asked on cross-examination how many people would be able to hear if someone was yelling in or around Lt. Col. Freeman's cubicle, the appellant responded that "everyone would hear."

Other witnesses estimated the size of the space differently. For instance, Major Loyack stated that he would estimate the LPO-2 space to be approximately 300 feet long by 15 feet wide and was at or less than the size of a football field but definitely bigger than a tennis court. He noted that, other than three or four private office spaces, everyone else was assigned to cubicles. The witness stated that his cubicle was directly next to Lt. Col. Freeman. He asserted that approximately 25 or 30 civilian employees and military staff were assigned to regular duties within that office space. Regardless of the exact size of the office space, Major Loyack testified consistently with the appellant that, if someone was yelling in LPO workspace, all other employees would likely hear it.

In his prehearing submissions, the appellant stated that Lt. Col. Freeman "[o]n numerous occasions, exclaimed 'nigger' while at the office and in close proximity" to him. AF, Tabs 12 and 27. During his testimony at hearing, he stated that this happened "uncountable" times. In his prehearing submissions, the appellant stated that Lt. Col. Eskelund was present on some of these occasions but did not admonish Lt. Col. Freeman. AF, Tab 12. However, for the first time at hearing, the appellant testified that Lt. Col. Eskelund also used the word

"nigger" in the appellant's presence on "times too numerous too count." The appellant's allegations were denied by both Lt. Col. Eskelund and Lt. Col. Freeman.[7] For the reasons stated herein, I find the testimony of Lt. Col. Eskelund and Lt. Col. Freeman more credible than that of the appellant.

First, as noted above, the office small was relatively small and both the appellant and Major Loyack consistently agreed that any yelling or loud talking in the workplace would be heard by other employees. Major Loyack testified under oath that he had "absolutely not" heard anyone yell "racial slurs" or the word "nigger" while employed at LPO-2. The appellant presented no witness to corroborate his testimony that the word "nigger" was used in LPO-2 "uncountable" times nor did he present any evidence that this word or any other racial slur was directed at him. Lt. Col. Eskelund, the proposing official, and Lt. Col. Simmons, the deciding official, testified that they were never advised by the appellant or anyone that racial slurs were being used in the office or that any offensive conduct based on race was being demonstrated in the office. Given the size of the office at issue, it seems incredible that military officers would use derogatory racial slurs, especially such an objectionable word such as "nigger," without anyone hearing it, confronting the perpetrator, or reporting it to higher-level management officials. In addition, later in the hearing, the appellant amended his testimony to indicate that the word had actually been used "more than three times" which does not appear consistent with earlier testimony that it happened "uncountable" times.

---

[7] I note that both employees stated on cross-examination that, in times past, they likely used the word 'nigger' within their lifetime. However, both denied any recent use and unequivocally denied any use of the work in the workplace or in any situation in which it would be directed at the appellant. Although he repeatedly testified that the misconduct occurred on a consistent and regular basis within a confined work space where many employees worked, the appellant presented no witness to testify to their use of this word at any time, either inside or outside of the workplace.

The appellant further asserted that, "all the time," Lt. Col. Freeman printed out cartoons from the internet and played radio programs that mocked people, countries and presidents. He stated that his discriminatory remarks occurred every day. The appellant further stated that Lt. Col. Freeman would often wear a turban on his head to mock his Muslim faith. Lt. Col. Freeman denied all of these allegations. Further, Major Loyack testified at hearing that Lt. Col. Freeman had an Arabic scarf that he brought home from the Persian Gulf War. The witness asserted that it was a traditional article of Muslim clothing and that Lt. Col. Freeman wore it as a scarf in the winter. However, Major Loyack testified unequivocally that he never observed Lt. Col. Freeman wearing a turban in the office. Again, the appellant presented no witness to corroborate this assertion even though he asserted that Lt. Col. Freeman often demonstrated this behavior.

The appellant also testified at hearing that Lt. Col. Freeman played Islamic prayer chants or songs "almost all the time until he was cautioned." Lt. Col. Freeman did testify that he had an international music CD which included a Islamic call to prayer. He said that he played it in the office one day and an employee from another division asked him to stop. The witness testified without dispute that he did cease playing such music.[8] Lt. Col. Freeman's testimony was corroborated by Major Loyack who asserted that Lt. Col. Freeman played the music one time but ceased upon request of a co-worker. There is simply no evidence to corroborate the appellant's testimony that he played the music on any regular basis nor any evidence that it was played on the one occasion to mock him. Although the appellant contends that this occurred on a regular basis, he presented no evidence to support that allegation. Again, it seems highly unlikely

---

[8] Similarly, he noted that he had an electronic mail notification tone which was a German song from the movie "Battle of the Bulge" but a co-worker told him that she did not like it and that he should keep the volume down on his computer.

that any offensive racial conduct would occur without a complaint to a management official by the appellant or a co-worker and without anyone hearing it who would testify on the appellant's behalf.

The appellant further alleged that Lt. Col. Freeman regularly mimicked and mocked his foreign accent. Lt. Col. Freeman denied this allegation. However, he did testify that he did often repeat movie lines using related character accents but he denied that they were offensive in nature or that they were directed in a mocking manner toward the appellant or any other person or ethnic group. Lt. Col. Eskelund and Major Loyack testified consistently that Lt. Col. Freeman did regularly recite movie lines but they denied that there was any evidence of any intent to mock or offend any ethnic group or any specific person. Again, the appellant presented no one to substantiate his allegations. It seems inherently improbable that any of the conduct cited by the appellant would continue on a regular and consistent basis and, yet, the appellant never complained and could present no witness to support his allegations. Thus, I find that the appellant failed to establish his affirmative defense of discrimination by preponderant evidence.

I note that the appellant entered into the record a computer-generated note allegedly placed on his desk prior to his arrival one day. AF, Tab 12, Appellant's Exhibit A-1. The note read, "Hey A**hole! Go Back to Where You Came From." *Id*. The appellant testified that he found the note on his desk when he arrived at work sometime in the fall of 2005 and around the same time as the PIP period. He stated that Lt. Col. Freeman and Lt. Col. Eskelund were already present in the office when he arrived. Lt. Col. Eskelund denied any knowledge of this note prior to his deposition during adjudication of this appeal. He testified that he was not informed of it by the appellant or any other employee at any time. The appellant presented no contrary evidence. Major Loyack testified that he too was unaware of this note prior to adjudication of this appeal. Lt. Col. Freeman was not asked about this note during the hearing but there is no evidence that he

placed the note on the appellant's desk and, moreover, he was not the proposing or deciding official in this matter. The appellant presented no evidence that anyone was aware of the note prior to adjudication of this appeal. Similarly, he presented no evidence that the note was prepared and placed by another employee who was involved in his performance action. Thus, I find that this note does not constitute sufficient evidence that the agency's performance-based removal action was the result of direct discrimination.

Finally, the appellant testified that profanity was used regularly in the workplace which included words such as "sh*t," mother f**cker," "dammit," and "a**hole." He stated that he considered them "racial slurs" because of how they were used and interpreted. Lt. Col. Freeman admitted the use of profanity in the workplace but denied that the words were intended as racial slurs nor were they directed at the appellant. Again, the appellant presented no witness to corroborate his assertions that any profanity was used which could reasonably be interpreted as a racial slur or was directed at him. It seems highly unlikely that such a witness could not be produced given the small size of the work space and the appellant's contentions that the alleged misconduct occurred on a consistent basis.

As noted above, to establish a discrimination claim by direct evidence, the appellant must show that his membership in a protected category was a "motivating factor" in the removal action at issue. *See Jones*, 68 M.S.P.R. at 403. I note that the appellant presented no allegations of misconduct by Col. Simmons, the deciding official. Further, other than the appellant's conclusory allegations which are largely refuted by the lack of corroborating evidence, there is no evidence to establish that the appellant's membership in a protected category motivated by direct discrimination. Thus, I find that the appellant failed to establish this affirmative defense by preponderant evidence.

*Disparate Treatment*: The appellant further alleges discrimination based on disparate treatment. The elements of a claim of discrimination on the grounds

of disparate treatment are: (1) that the appellant is a member of a protected group; (2) that he suffered an adverse employment action; and (3) that there was a causal relationship between membership in the protected class and the adverse action that he suffered. *See Thomas v. Office of Personnel Management*, 47 M.S.P.R. 369 (1991). To show disparate treatment, the appellant may present evidence to show that other persons who were similarly situated were treated differently than he was treated. *See Spahn v. Department of Justice*, 93 M.S.P.R. 195 (2003). Once the appellant has established a prima facie case, the burden shifts to the agency to articulate a legitimate, nondiscriminatory reason for the agency's action. Finally, once the agency has articulated a legitimate, nondiscriminatory reason for its action, the burden shifts to the appellant to show that the agency's proffered explanation constitutes a pretext for discrimination. *See Creer v. U.S. Postal Service*, 62 M.S.P.R. 656, 661 (1992).

As discussed above, the appellant asserts that the agency's action was the result of discrimination based on race, color, and national origin. AF, Tabs 1, 11, 12, 19, and 27. The appellant contends that he is "black and of Nigerian origin." *Id.* He asserts that he is similarly situated to the other employees in LPO-2 which included Lt. Col. Robert Freeman, Major David Loyack, and Victor Splan. *Id.* The Board has consistently held that, for other employees to be deemed similarly situated, all relevant aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employees. *See Spahn*, 93 M.S.P.R. at 202 (2003); *Wilson v. U.S. Postal Service*, 34 M.S.P.R. 393, 397 (1987). In an appeal such as this, where an employee is removed for unacceptable performance, comparator employees must have had performance deficiencies similar to the appellant's deficiencies and there must be no differentiating or mitigating circumstances that would distinguish their performance deficiencies of the appropriate discipline for such deficiencies. *See, e.g., Meyers v. Equal Employment Opportunity Commission*, 45 M.S.P.R. 488, 492 (1990).

It is undisputed in this case that Lt. Col. Freeman and Major Loyack are members of the military. AF, Tab 27. It is further undisputed that military employees are not subject to civilian personnel law including Chapter 43 governing performance issues or Title 5 governing adverse actions. Thus, military employees are not subject to the same law governing the appellant's employment in the Federal government. Accordingly, it has long been held that civilian employees are not similarly situated to military employees. *See Simmons v. Department of the Navy*, 11 M.S.P.R. 82 (1982) (civilian personnel are not similarly situated to military personnel for purposes of determining disparate treatment); *Gonzales v. Department of the Navy*, 101 M.S.P.R. 248 (2006) (Board held that civilian police officer was not similarly situated to other military police officers). *See also Fountain v. Department of the Army*, 19 M.S.P.R. 1 (1984). *Cf. Brasch v. Department of Transportation*, 101 M.S.P.R. 145 (2006) (Board found that civilian employee failed to name any non-military employees to whom he was similarly situated).

he was similarly situated).

The appellant further contends that he is similarly situated to Victor Splan. AF, Tabs 1, 11, 12, 19, and 27. It is undisputed that Mr. Splan is a contractor employed by Decision Engineering and, thus, he is not a Federal employee. Accordingly, it is further undisputed that he is not subject to Federal law governing performance and adverse actions. Thus, the appellant could also not be deemed to be similarly situated to Mr. Splan.

Thus, for the reasons stated above, I find that the appellant failed to establish this affirmative defense by preponderant evidence.

*Disparate Impact*: The appellant further contends that the agency's action was the result of discrimination based on disparate impact. To establish a prima facie case of disparate impact, the appellant must identify a specific employment practice that is challenged as responsible for the statistical disparities and show that the application of the particular practice created the disparate impact. *See Stern v. Federal Trade Commission*, 46 M.S.P.R. 328, 333 (1990). If the

appellant does so, the agency must offer a business justification for its use of the practices. *Id.* If the agency meets its burden of production, the appellant may establish disparate impact by showing the availability of alternative practices that achieve the same business ends with less impact on the protected group. *Id.*

In this case, the appellant asserts that the employment practice at issue is that the agency hires employees with "broken English" and expects them to demonstrate English proficiency. AF, Tabs 19 and 27. However, the appellant presented no evidence that this is an "employment practice" utilized by the agency and he has not offered any statistical evidence to support a finding that any such alleged practice created a disparate impact. The appellant conceded in the prehearing conference that he had "no empirical evidence" to support this allegation. *Id.* at Tab 27. Similarly, the appellant presented no such evidence at hearing. Rather, the appellant's allegation was based solely on his conjecture and supposition. Thus, I find that the appellant failed to establish this affirmative defense by preponderant evidence.

*Retaliation for Protected Disclosures:* The appellant asserts that the agency's action was taken in retaliation for disclosures protected under 5 U.S.C. § 2302(b)(8). AF, Tabs 11, 12, 19, and 27. The appellant argues that he made three protected disclosures which were contributing factors in the agency's removal action. *Id.*

In order to establish an affirmative defense of reprisal for whistleblowing activities under the Whistleblower Protection Act (WPA) and implementing regulations, the appellant must prove by preponderant evidence that he made a disclosure described under 5 U.S.C. § 2302(b)(8), and that the disclosure was a contributing factor in the personnel action taken against him. *See* 5 C.F.R. § 1209.7(a). *See also Scott v. Department of Justice,* 69 M.S.P.R. 211, 236-37 (1995), *aff'd,* 99 F.3d 1160 (Fed.Cir.1996) (Table). If the appellant meets this burden, the burden of proof shifts to the agency to demonstrate, by clear and convincing evidence, that it would have taken the same personnel action in the

absence of such disclosure. *See* 5 C.F.R. § 1209.7(b). *See also Scott*, 69 M.S.P.R. at 236-37. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established, and is a higher standard than the standard of substantial evidence or preponderant evidence. 5 C.F.R. § 1209.4(d). *See Schneider v. Department of Homeland Security*, 98 M.S.P.R. 377 (2005).

The WPA broadly defines the type of disclosure that is protected, in pertinent part, as any disclosure of information by an employee, which he reasonably believes evidences either a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 1213(a). To establish that he made a protected disclosure, the appellant first must show by a preponderance of the evidence that he disclosed information that he reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, and abuse of authority, or substantial and specific danger to public health or safety. The appellant need not prove that the situation actually existed, only that a reasonable person in his position would believe that it did. The proper test for determining whether the appellant had a reasonable belief is as follows: Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence, for example, gross mismanagement? *See LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir.1999).

In regard to his first disclosure, the appellant asserts that he "blew the whistle in response to the Funding Request which was signed by Lt. Col. Eskelund and dated September 14, 2005." AF, Tabs 19 and 27. He contends that the original request was for "$12,036.00 to purchase 2 blackberry devices and activation and maintenance" which he contends was a request that was "480% greater than the appropriate amount" which was later "edited down to a far lesser figure of $2,506.00." *Id*. at Tab 19. *See* AF, Tab 12, Appellant's Exhibits M

and S.  The appellant testified at hearing that the funding request was atypical because it was not typed and prepared by him but, rather, it was handwritten and prepared by Lt. Col. Eskelund.  He stated that he found the funding request on his chair when he arrived at work one morning and he searched his computer but found that the request was not documented anywhere.  The appellant contends that he made disclosures regarding the "substantial irregularities" in this funding request to Lt. Col. Eskelund and Major Loyack on September 15, 2005.  *Id.* at Tab 27.  I note that this is the same date on which Lt. Col. Eskelund informed the appellant that his work performance was unacceptable in one or more critical elements.  Ag. File, Tab 4G.  The appellant testified at hearing that he went to Major Loyack as he had been involved with the blackberry acquisitions and thus would be familiar with the blackberry funding request.

The appellant further contends that, on September 16, 2005,  he made disclosures regarding this funding request to Michelle Harrell in LSR which was the division of the agency responsible for handling, *inter alia,* the realignment of funds including checking expenditure requests against the agency's budget and issuing payments.  The appellant presented no detailed testimony or evidence as to the content of his alleged disclosures to Lt. Col Eskelund, Major Loyack, or Michelle Harrell.

Lt. Col. Eskelund testified that he did task the appellant with obtaining two of the devices at issue and he believed that funds were available.  However, the appellant came to him and reported that he was unable to purchase them.  Thus, Lt. Col. Eskelund stated that he turned the project over to Major Loyack.  He had discussions with the Deputy Director of I&L and presented an initial cost of approximately $12,000 which he thought was a "little high."  After conferring with his team, he found that the initial cost included a 5 year plan for maintenance and international coverage.  He found that to be reasonable and authorized the purchase.  The witness stated that he drafted the funding request and placed it on the appellant's desk.  However, based on additional research into

OCT-29-2007 10:40     OFFICE OF COUNSEL FOR CMC          760 695 0315     P.05
Case 1:07-cv-01552-RJL     Document 8-8     Filed 04/09/2008     Page 41 of 52

38

maintenance and coverage options, the amount of $12,000 was later reduced to approximately $2,500 and the devices were purchased. The witness stated that the appellant never approached him to discuss the cost or to raise any concerns as to the legality of the purchase.

Major Loyack testified that Lt. Col. Eskelund had instructed him to inquire as to equipment purchases to include the blackberry devices. He stated that the appellant was ultimately responsible for the purchase but he did not appear to understand the process and had not acted on it. Accordingly, Lt. Col. Eskelund asked Major Loyack to "step up" and find out "what was going on." The witness asserted that it was a "rather convoluted" process and he looked at the equipment to obtain data regarding prices. The witness stated that he consulted with the agency's Information Technology group and the blackberries were ultimately purchased with a final cost, including a service contract, of approximately $2,500. Major Loyack presented no testimony that the appellant informed him of any concerns regarding the funding request.

Even though the appellant stated that he reported "irregularities" regarding this funding request, he did not identify with any specificity the allegations he presented to them. Thus, although the appellant asserted that he had a reasonable belief that this disclosure alleged a gross waste of funds and gross mismanagement, he presented no evidence as to what information was provided in order to establish that he did have a reasonable belief that he was making a protected disclosures. Absent the essential facts about the appellant's disclosure, it is not possible to determine whether he had a reasonable belief. *See LaChance*. 174 F.3d at 1381 (proper test for determining whether the appellant had a reasonable belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence wrongdoing as defined by the WPA). *See also Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, 658 (2004). Moreover, as noted herein, the appellant contends that he had a

OCT-29-2007 10:41     OFFICE OF COUNSEL FOR CMC          760 695 0315     P.06
Case 1:07-cv-01552-RJL     Document 8-8     Filed 04/09/2008     Page 42 of 52

39

reasonable belief in regard to each disclosure that evidenced gross waste of funds and/or gross mismanagement. In regard to gross mismanagement, the appellant must show a reasonable belief of management action or inaction that created a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *See Downing v. Department of Labor*, 98 M.S.P.R. 64 (2004), *aff'd*, 162 Fed. Appx. 993 (Fed. Cir. 2006) (Table); *Boughton v. Department of Agriculture*, 94 M.S.P.R. 347, 351-52 (2003). In regard to allegations of gross waste of funds, the appellant must establish that he had a reasonable belief regarding expenditures that are significantly out of proportion to the benefit reasonably expected to accrue to the government; a mere debatable use of funds if not sufficient. *See Downing*, 98 M.S.P.R. at 70. The appellant offered nothing to demonstrate that he had a reasonable belief that a purchase of approximately $12,500 by an agency with a budget of $90 million would create a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. Similarly, he offered no evidence or argument that he had any reasonable belief that an expenditure of this amount was significantly out of proportion to the benefits expected to accrue to this agency. As noted above, the appellant's debate over the use of these funds is insufficient. In sum, the appellant has presented insufficient facts to determine whether he did, in fact, have a reasonable belief that he made a protected disclosure.

Even if the appellant had established that he had a reasonable belief of a disclosure made to Lt. Col. Eskelund, his disclosure would not be protected. The appellant conceded in the prehearing conference that Lt. Col. Eskelund was the alleged wrongdoer. AF, Tab 27. Although Lt. Col. Eskelund denied any disclosures to him by the appellant, it is undisputed that, under the WPA, when an employee reports or states that there has been misconduct by a wrongdoer to the wrongdoer, the employee is not making a "protected disclosure." *See Mogyorossy*, 96 M.S.P.R. at 662.

As noted above, the appellant also contends that he made disclosures to Major Loyack about this funding request. AF, Tab 27. Even if the appellant had established that he had a reasonable belief of a disclosure made to Lt. Col. Eskelund, his disclosure would not be protected. In the prehearing conference, the appellant stated that Major Loyack was Lt. Col. Eskelund's co-worker and he conceded that he had no supervisory or other authority to override or remedy Lt. Col. Eskelund's allegedly improper request. AF, Tab 27. Major Loyack testified at hearing that, at the time of the events in question, Lt. Col. Eskelund was his supervisor. The Board has held that an employee does not make a protected disclosure when his alleged protected disclosure is made to persons without authority to remedy the alleged wrongdoing. *See Willis v. Department of Agriculture*, 141 F.3d 1139, 1143 (Fed. Cir. 1998); *Price v. National Aeronautics & Space Administration*, 83 M.S.P.R. 661, 663 (1999). Similarly, the appellant conceded at the prehearing conference that Michelle Harrell, who worked in LSR, lacked any authority over Lt. Col. Eskelund and lacked any authority to modify or overturn his funding request. AF, Tab 27. Thus, it does not appear that, even if he had established that he had a reasonable belief that he had made a protected disclosure, the appellant's disclosure to Ms. Harrell would not be protected as she was not in a position to remedy the wrong. I further note that Lt. Col. Eskelund testified that Ms. Harrell had contacted him about the funding request after she was made aware of it by Major Loyack and the appellant testified that, when he spoke to her, she indicated from the outset that she was aware of the funding request and had processed it. There is no evidence that she had the authority to take any action in regard to an alleged improper funding request. Thus, in the absence of any evidence that she had any authority to remedy the alleged wrong, I find that the appellant failed to establish that his disclosure to Ms. Harrell was protected or that it was a contributing factor in the removal action at issue.

In regard to his second alleged disclosure, the appellant contends that he "blew the whistle subsequent to a Funding Request for food made on January 26.

2005." AF, Tab 12, Appellant's Exhibit T; Tab 19, Tab 27. The appellant indicates that the funding request was made by the "Head, Logistics Plans and Operations Branch" which was Lt. Col. Rudolf Webbers at the time of the request. *Id.* The appellant asserts that the request concerned "meals, as well as lodging and transportation, for a conference in Mayport, Florida" and that it "stood in direct contradiction to an April 18, 2003 Department of Navy memorandum" that "announces a general Navy policy that taxpayer money could not be used toward the purchase of light refreshments for conferences." AF, Tabs 19 and 27. The appellant contends that, on the day the request was made, he "pointed this information out to Lt. Col. Webbers" but he "insisted the appellant procure funding for the food regardless." *Id.* The appellant further contends that, on the same day as the request, he "brought his concern to the Senior Finance Officer Janet Cocks in LOGCOM" (Logistics Command) and explained "that the use of government appropriations for the purpose of food is improper." *Id.*

The appellant contends that he had a reasonable belief that his disclosure alleged a gross waste of funds. Again, as noted above, the appellant must establish that he had a reasonable belief regarding expenditures that are significantly out of proportion to the benefit reasonably expected to accrue to the government; a mere debatable use of funds if not sufficient. *See Downing,* 98 M.S.P.R. at 70. The request at issue was for $560.00. AF, Tab 19, Appellant's Exhibit T. The appellant offered no evidence or argument to establish that this small expenditure was significantly out of proportion to the benefit reasonably expected to accrue to the government. Moreover, the appellant conceded in the prehearing conference that he contacted Janet Cocks, a Senior Finance Officer in Georgia, because she had more experience and he needed advice as to how to respond to the funding request. AF, Tab 27. The appellant offered no evidence or argument that he had any reasonable belief at that the time that he was making a protected disclosure to Ms. Cocks. Moreover, even if the appellant could establish that he had a reasonable belief that he made

OCT-29-2007 10:41   OFFICE OF COUNSEL FOR CMC          760 695 0315     P.09
Case 1:07-cv-01552-RJL   Document 8-8   Filed 04/09/2008   Page 45 of 52

42

a protected disclosure to Lt. Col. Webbers or Ms. Cocks, his allegations would
still fail. Lt. Col. Webbers was the alleged wrongdoer. As noted above, the
Board has held that an employee does not make a protected disclosure when his
alleged protected disclosure is made to persons without authority to remedy the
alleged wrongdoing. . See *Willis*, 141 F.3d at 1143 (Fed. Cir. 1998); *Price*,
83 M.S.P.R. at 663. Finally, the appellant must establish that the disclosure was
a contributing factor in the personnel action taken against him. *See* 5 C.F.R.
§ 1209.7(a). *See also Scott*, 69 M.S.P.R. at 236-37. Thus, I find that the
appellant failed to establish that his alleged disclosure was protected or that it
was a contributing factor in the removal action at issue.

Finally, in his third alleged disclosure, the appellant asserts that it
concerned a request by Lt. Col. Eskelund "to procure funding for the '8[th] and I'
venture." AF, Tab 19. The appellant testified at hearing that he was first asked
to complete this funding request by Lt. Col. Freeman and the request was
authorized by Lt. Col. Eskelund. The appellant asserted at the prehearing
conference that he received the funding request at issue from Lt. Col. Eskelund
for entertainment and food to be purchased for an event for visiting military
officers at the Marine Corps barracks located at 8th and I Streets. *Id.* at Tab 27.
The appellant asserted that he notified Lt. Col. Eskelund and Lt. Col. Freeman
that such a funding request was improper. *Id.* However, these are both alleged
wrongdoers and, as discussed above, when an employee reports misconduct by a
wrongdoer to the wrongdoer, the employee is not making a "protected disclosure"
under the WPA. *See Mogyorossy*, 96 M.S.P.R. at 662. In regard to his alleged
disclosures to Officer Cocks, the appellant testified at hearing that he contacted
her for guidance and advice. When he asked her how to handle this funding
request, she told him that it would be improper. The appellant testified that he
asked her "why?" Thus, it appears that the appellant contacted Ms. Cocks for
guidance and training. The appellant presented no testimony or other evidence
that he had a reasonable belief that he made any protected disclosure to

OCT-29-2007  10:41        OFFICE OF COUNSEL FOR CMC              760 695 0315    P.10
Case 1:07-cv-01552-RJL    Document 8-8    Filed 04/09/2008    Page 46 of 52

43
Ms. Cocks nor did he establish that she was in any position to remedy any alleged wrongdoing. Further, although the appellant alleged that his disclosure was regarding a gross waste of funds, the appellant offered no evidence or testimony about the expenditure amount at issue nor did he offer any evidence or argument to establish that he had a reasonable belief that the expenditures at issue was significantly out of proportion to the benefit reasonably expected to accrue to the government. *See Downing*, 98 M.S.P.R. at 70. Thus, I find that the appellant failed to establish that he had a reasonable belief that he made any disclosure, that any alleged disclosure was protected, or that any alleged disclosure was a contributing factor in the removal action at issue.

I note for the record that, assuming *arguendo* that the appellant could establish that he made protected disclosures which were a contributing factor in the agency's action, the burden would shift to the agency to present clear and convincing evidence that it would have taken its removal action against the appellant in the absence of his alleged whistleblowing activity. *See Gergick v. General Services Administration*, 43 M.S.P.R. 651, 662 (1990). In this case, as discussed above, the agency established that the appellant's performance was deficient in four critical elements. Although the burden of proof is substantial, I would find that the agency established its charge of unacceptable performance by clear and convincing evidence.

*Harmful Procedural Error*: The appellant contends that the agency failed to provide "counseling, training, closer supervision, and other appropriate measures during the reporting period in accordance with MCO 12430.2(7)(b)(3)." To prove harmful procedural error, the appellant must prove that the agency committed an error in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See* 5 C.F.R. § 1201.56(c)(3). The burden is upon the appellant to show that the agency committed an error and that the error was harmful, *i.e.*, that it caused substantial prejudice to his rights.

OCT-29-2007 10:41 OFFICE OF COUNSEL FOR CMC 760 695 0315 P.11
Case 1:07-cv-01552-RJL Document 8-8 Filed 04/09/2008 Page 47 of 52

44

Although the appellant appeared to argue at hearing that the counseling and direction he received from management officials was inadequate, the evidence of record, as discussed above, indicates that the appellant received significant counseling, training and supervision. As discussed above, the appellant testified that he met with Lt. Col. Eskelund almost every day to review work assignments. Testimony from Mr. Rotchford and Lt. Col. Eskelund indicate that the appellant was directed to meet with Mr. Rotchford to reconcile budget issues. The substantial evidence of record is that the appellant failed to avail himself of this opportunity. Further, although I found his testimony to lack credibility, the appellant testified that he met regularly with Mr. Rotchford to address questions and concerns he had regarding his work assignments. Moreover, the appellant failed to identify what training would have resulted in a different outcome. When specifically asked at hearing what training he required, the appellant responded that it would be "budgeting, whatever...anything related to finance." However, the appellant was not removed primarily for issues of budgeting or finance. Rather, he was removed because, for example, he failed to meet deadlines for writing memorandums and other papers, failed to ensure that work was professionally presented and free of errors, and failed to comply with directives regarding working with other agency employees to, for example, provide training for his co-workers or reconcile budget issues. In sum, the appellant failed to establish by preponderant evidence that any additional counseling, training, closer supervision, or other measures would have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.

The agency's penalty of removal is warranted.

As discussed at length herein, the agency submitted substantial evidence to establish that the appellant's performance was unacceptable. Further, the appellant failed to establish his affirmative defense by preponderant evidence. Consequently, the agency's choice of action to be taken was permissible, and is

OCT-29-2007 10:42     OFFICE OF COUNSEL FOR CMC          760 695 0315    P.12
Case 1:07-cv-01552-RJL     Document 8-8     Filed 04/09/2008     Page 48 of 52

45

not subject to further review by the Board.[9]  *See* 5 U.S.C. § 4303(a).  *See Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558 (Fed. Cir. 1985).  *See also Newton v. Department of the Navy*, 27 M.S.P.R. 156, 157 (1985) (Board has no authority to review or modify agency's choice of a removal or demotion action taken under Chapter 43).

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:

Sherry A. Zamora
Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the administrative judge may vacate the initial decision in order to accept a settlement agreement into the record.  *See* 5 C.F.R. § 1201.112(a)(5).

## NOTICE TO APPELLANT

This initial decision will become final on __DEC - 8 2006__, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a

---

[9] The appellant further asserts that the penalty was unduly harsh based on his assertion that the agency did not consider the *Douglas* factors, including whether lesser penalties were appropriate.  AF, Tab 19.  However, the *Douglas* factors are not applicable to performance actions taken under Chapter 43 because, as noted herein, the Board is without any authority to modify the penalty when the charge is sustained in a Chapter 43 appeal. *See Newton*, 27 M.S.P.R. at 157.

OCT-29-2007 10:42        OFFICE OF COUNSEL FOR CMC          760 695 0315      P.13
Case 1:07-cv-01552-RJL        Document 8-8        Filed 04/09/2008        Page 49 of 52

46

petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance. 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by

OCT-29-2007 10:42    OFFICE OF COUNSEL FOR CMC    760 695 0315    P.14
Case 1:07-cv-01552-RJL    Document 8-8    Filed 04/09/2008    Page 50 of 52

47

filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the

# CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Ujuchris Okereh
12107 Woodwind Lane
Mitchellville, MD 20721

### Appellant Representative

U.S. Mail

A.P. Pishevar, Esquire
Yona Shleyner, Esquire
600 East Jefferson Street, Suite 316
Rockville, MD 20852

### Agency Representative

U.S. Mail

LTC Thomas A. Damisch
Department of the Navy
HQMC (Code CL) Pentagon 4E468
3000 Marine Corps Pentagon
Washington, DC 20350-3000

November 3, 2006
(Date)

Marie Sumner
Paralegal Specialist

Docket No. DC-0432-06-0432-I-1
Party:        Agency's Representative


Ltc Thomas A. Damisch
Department of The Navy
HQMC (Code CL) Pentagon 4E468
3000 Marine Corps Pentagon
Washington, DC 20350-3000

*Pentagon recd 8Nov06*

*Reid via mail on 13 Nov 0 L*

*JMD*

Attachment G

Recd 5 Dec 06
JAX




**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036



RECEIVED
NOV 27 2006
NAVOECMA

Ujuchris Okereh,
Complainant,

v.

Dr. Donald C. Winter,
Secretary,
Department of the Navy,
Agency.

Appeal No. 0120063850[1]

Agency No. 060002700742

## DECISION

Complainant filed a timely appeal with this Commission from the agency's decision dated May 9, 2006, dismissing his complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq*. In his complaint dated April 14, 2006, complainant alleged that he was subjected to discrimination on the bases of race (African-American), national origin (Nigerian), and color (Black) when he was removed from his position. Upon review, the Commission finds that complainant's complaint was properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(4) for raising the same matter in an appeal before the Merit Systems Protection Board (MSPB).

A mixed case complaint is a complaint of employment discrimination filed with a federal agency, related to or stemming from an action that can be appealed to the MSPB. 29 C.F.R. § 1614.302(a)(1). An aggrieved person may initially file a mixed case complaint with an agency or may file a mixed case appeal directly with the MSPB, pursuant to 5 C.F.R. § 1201.151, but not both. 29 C.F.R. § 1614.302(b). 29 C.F.R. § 1614.107(a)(4) provides that an agency shall dismiss a complaint where the complainant has raised the matter in an appeal to the MSPB and 29 C.F.R. § 1614.302 indicates that the complainant has elected to pursue the non - EEO process. The Commission finds that the instant complaint should be dismissed because complainant filed an appeal with the MSPB before he filed his EEO complaint. Information provided by complainant on appeal indicates that the matter has been scheduled for a hearing

---

[1] Due to a new Commission data system, this case has been redesignated with the above-referenced appeal number.



2                                          0120063850

with the MSPB. Accordingly, the agency's final decision dismissing complainant's complaint is affirmed.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you

3                                          0120063850

work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

NOV 2 0 2006
Date

4                                    0120063850

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Ujuchris Okereh
70 Broadleaf Dr
Newark, DE 19702

A.P. Pishevar
600 E Jefferson St
#316
Rockville, MD 20852


William A. Navas Jr., Asst. Secretary, MRA/EEO
(NAVOECMA) OCHR Code 015
Department of the Navy
614 Sicard St., SE #100
Washington Navy Yard, DC 20374-5072


__NOV 2 0 2006__
Date


_____
Equal Opportunity Assistant

Attachment H



# U.S. MERIT SYSTEMS PROTECTION BOARD

**Office of the Clerk of the Board**
1615 M Street, N.W.
Washington, D.C.  20419-0002

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

**December 7, 2006**

Notice to:

Ujuchris Okereh
12107 Woodwind Lane
Mitchellville, MD 20721

    Re: Ujuchris Okereh v. Department of the Navy
    MSPB Docket Number: DC-0432-06-0432-I-1

   The Board acknowledges <u>December 7, 2006</u> as the filing date of your petition for review. The other party(s) may file a response, or file a cross petition for review, on or before <u>January 1, 2007</u>. A cross petition for review differs from a response because it also disagrees with the initial decision. If a cross petition for review is filed, any response must be filed within 25 days after the date of service of the cross petition.  The filing date is the date the document is postmarked, if mailed; the date the document is received by the Board, if personally delivered; the date the facsimile of the document was sent; or the date of electronic submission, if filed via e-Appeal.

   The record closes when the time period ends for filing a response to the petition for review or to the cross petition. After the record closes, the Board may consider an additional submission only if the submission includes a statement that convinces the Board why the submission was not available earlier.  5 C.F.R. § 1201.114(i).

   The Board encourages settlement. If the parties settle and they enter a written settlement agreement into the record, the Board will enforce the terms. The Board has no enforcement authority over settlement agreements that are not entered into its record.

        Bentley M. Roberts, Jr.
        Clerk of the Board

        Dinh Chung
        Case Management Specialist

Attachment: Settlement Program Information

H

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Ujuchris Okereh
12107 Woodwind Lane
Mitchellville, MD 20721

Appellant Representative

U.S. Mail

Yona Shleyner
600 East Jefferson Street, Suite 316
Rockville, MD 20852

Agency Representative

Electronic Mail

LTC Thomas A. Damisch
Department of the Navy
HQMC (Code CL) Pentagon 4E468
3000 Marine Corps Pentagon
Washington, DC 20350-3000

_____December 7, 2006_____
(Date)

_____
Dinh Chung
Case Management Specialist

## United States Merit Systems Protection Board
## PETITION FOR REVIEW SETTLEMENT PROGRAM

### Introduction

In keeping with its policy of encouraging the settlement of appeals, the Board has a program that helps parties resolve their disputes at the petition-for-review level. The program is conducted by settlement attorneys in the Board's Office of Appeals Counsel who are familiar with federal employment law. Settlement will not be attempted in every case because of the Board's limited resources. When a case is selected, a settlement attorney will contact both parties either in writing or by telephone.

### Case Selection

Cases are selected for the settlement program in several ways. Most are assigned to settlement attorneys randomly, as they are received in the Office of Appeals Counsel. Others are selected by a vote of at least 2 Board members who conclude that settlement efforts would be worthwhile in a particular case. Other cases are selected by decision-writing attorneys in the Office of Appeals Counsel based on their judgment, concurred in by a settlement attorney, that settlement efforts would be appropriate. Still others may be selected based on a party's request.

If you would like the Board's help in settling your appeal at the petition-for-review level, you may call its headquarters offices in Washington, D.C., at 1-800-209-8960, and leave a message. A settlement attorney will contact you to discuss settlement possibilities.

### Settlement Discussions

If an appeal is selected for the settlement program, the parties and their representatives must be prepared to discuss settlement options in good faith. Representatives must have the authority to enter into a settlement agreement.

When a Board appeal is settled, both parties can gain something that they may lose if the Board decides the appeal by the application of legal principles where, most often, one party wins and the other loses. Depending on the circumstances of a particular case, the advantages of such a settlement to an appellant *might* include: a clean record with the reason for separation recorded as a voluntary resignation; a more acceptable date of separation; a modified penalty; a cash buy-out; receipt of some, if not all, back pay; the agency's agreement not to challenge an application for unemployment benefits; the agency's agreement not to divulge detrimental information to potential future employers; or the payment of some, if not all, attorney fees. The advantages to the agency *might* include: the immediate resolution of an employment problem, possibly extending to other employment disputes involving the same employee; saving the time of agency representatives, management officials, and agency witnesses; not having financial resources tied up in litigation before the Board and the courts; and minimizing or avoiding potential back-pay liability.

*Please keep in mind that these advantages to the appellant and the agency are possibilities only; some or all may not apply to a particular case, but there may be other advantages depending on the nature of the case.*

Attachment I



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036
Jan 05, 2007

RECEIVED
JAN 1 1 2007
NAVOECMA

REQUEST FOR RECONSIDERATION
COPY OF EEOC'S ACKNOWLEDGEMENT OF COMPLAINANT'S REQUEST

Navy, Dept of
(NAVOECMA) OCHR Code 015
614 Sicard St., SE #100
Washington Navy Yard, DC 20374-5072

Re: Okereh v. Navy, Dept of
Docket # : 0520070226
Assoc # : 0120063850
Filed Date: 12/27/06
Agency Number(s): 060002700742

Dear Mr. Okereh:

The above request for reconsideration has been docketed and assigned the docket number listed above. Please refer to the docket number on all correspondence to this office.

The Commission, in its discretion, may grant the request if the party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the decision will have a substantial impact on the policies, practices, or operation of the agency. 29 C.F.R. 1614.405(b) (1) & (2).

You were required to submit any supporting documents or brief at the time the request was filed. The opposing party shall have 20 days from the date of service in which to submit any brief or statement in opposition. Such service must be included with the submission to the Office of Federal Operations. The Commission will accept statements or briefs in opposition to a request by facsimile transmission (Fax Number 202-663-7022) provided they are no more than ten (10) pages long.

I

If you have questions regarding the processing of your appeal, please call
the EEOC, Office of Federal Operations at (202) 663-4599 and ask to speak to
the Attorney of the Week.

Sincerely,

Robert J. Barnhart

Robert J. Barnhart, Director
Compliance and Control Division
Office of Federal Operations

CC:

(2)

Attachment J



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Ujuchris Okereh,
Complainant,

v.

Dr. Donald C. Winter,
Secretary,
Department of the Navy,
Agency.

Request No. 0520070226

Appeal No. 0120063850
Agency No. 06-00027-00742

## DENIAL

Complainant timely requested reconsideration of the decision in *Ujuchris Okereh v. Department of the Navy*, EEOC Appeal No. 0120063850 (November 20, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.[1] The decision in EEOC Appeal No. 0120063850 remains the

---

[1] On request, complainant indicates that he did not make an informed election to file an appeal with the Merit Systems Protection Board (MSPB), rather than file an EEO complaint. However, where an aggrieved person pursues his claim in both the EEO and Merit Systems Protection Board (MSPB) forums, the adjudication of the case on the merits by the MSPB is tantamount to an election of remedies. *Sink v. United States Postal Service*, EEOC Appeal No. 01975674 (September 23, 1999), *Khera v. Department of Defense (Defense Logistics Agency)*, EEOC Request No. 05920280 (April 23, 1992). On November 3, 2006, the MSPB issued an initial decision upholding complainant's removal and finding no race, color, and national origin discrimination. This was the same claim in complainant's EEO complaint. Accordingly, complainant is deemed to have made an election.

2                                                      0520070226

Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
_____
Carlton M. Hadden, Director
Office of Federal Operations

FEB 0 8 2007
_____
Date

3                                              0520070226

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Ujuchris Okereh
12107 Woodwind Lane
Mitchellville, MD 20721-4128

A.P. Pishevar
Pishevar & Associates, P.C.
600 East Jefferson St., Suite 316
Rockville, MD 20852

William A. Navas Jr., Asst. Secretary, MRA/EEO
(NAVOECMA) OCHR Code 015
Department of the Navy
614 Sicard St., SE #100
Washington Navy Yard, DC 20374-5072

FEB 0 8 2007
_____
Date

_____
Equal Opportunity Assistant

Attachment K

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

UJUCHRIS OKEREH,

    Appellant,

    v.

DEPARTMENT OF THE NAVY,

    Agency.

DOCKET NUMBER
DC-0432-06-0432-I-1

DATE: February 27, 2007

*Rec'd 27 Feb 07*
*Job*

Yona Shleyner, Esquire, Rockville, Maryland, for the appellant.

A.P. Pishevar, Esquire, Rockville, Maryland, for the appellant.

Lt. Col. Thomas A. Damisch, Washington, D.C., for the agency.

*Failed to meet deadlines ✓*

### BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

*① 30 days fm receipt w/ EEO = 5 Apr 07 ✓*
*② 30 days fm receipt for Judicial action = 5 Apr. ✓*
*③ Judicial Review = 60 days w/ Dist Ct. = 7 May. ✓*

### FINAL ORDER

    The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

    After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made

K

no error in law or regulation that affects the outcome.  5 C.F.R. § 1201.115(d).
Therefore, we DENY the petition for review.   The initial decision of the
administrative judge is final.  This is the Board's final decision in this matter.
5 C.F.R. § 1201.113.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request the Equal Employment Opportunity Commission (EEOC)
to review this final decision on your discrimination claims.  *See* Title 5 of the
United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  You must send
your request to EEOC at the following address:

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, DC  20036

You should send your request to EEOC no later than 30 calendar days after your
receipt of this order.   If you have a representative in this case, and your
representative receives this order before you do, then you must file with EEOC no
later than 30 calendar days after receipt by your representative.  If you choose to
file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your
discrimination claims, you may file a civil action against the agency on both your
discrimination claims and your other claims in an appropriate United States
district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with
the district court no later than 30 calendar days after your receipt of this order.  If
you have a representative in this case, and your representative receives this order

before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.   *See* 42 U.S.C. § 2000e5(f); 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request the United States Court of Appeals for the Federal Circuit to review this final decision on the other issues in your appeal. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC  20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read

4

this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov.   Additional information is available at the court's website, http://fedcir.gov/contents.html.   Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.


FOR THE BOARD:                            _____

                                          Bentley M. Roberts, Jr.
                                          Clerk of the Board

Washington, D.C.

5

# CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:


Certified Mail          Yona Shleyner, Esq.
                        A.P. Pishevar, Esq.
                        600 East Jefferson Street, Suite 316
                        Rockville, MD 20852

U.S. Mail               Ujuchris Okereh
                        12107 Woodwind Lane
                        Mitchellville, MD 20721

Electronic Mail         LTC Thomas A. Damisch
                        Department of the Navy
                        HQMC (Code CL) Pentagon 4E468
                        3000 Marine Corps Pentagon
                        Washington, DC 20350-3000


_____February 27, 2007_____          _____
           (Date)                                Dinh Chung
                                                 Case Management Specialist